# UNITED STATED DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BODUM USA, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> A TOP NEW CASTING, INC., ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:16-cv-02916 <br><br> Judge Matthew F. Kennelly <br><br> JURY TRIAL DEMANDED <br><br> **FILED UNDER SEAL** |

## A TOP NEW CASTING, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NAKED LICENSING

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1
II. NATURE AND STAGE OF PROCEEDINGS .................................................................... 2
III. JURISDICTION AND VENUE ............................................................................................ 2
IV. FACTUAL BACKGROUND ................................................................................................ 3
    A. French-Press Style Coffee Makers – Generally ........................................................ 3
    B. The Bodum And Bonjour French Presses ................................................................. 3
    C. Bonjour Has Sold Monet French Presses Without Quality Control ......................... 5
V. THE APPLICABLE LAW ..................................................................................................... 7
    A. Summary Judgment ................................................................................................... 7
    B. Naked Licensing ........................................................................................................ 7
VI. ARGUMENT .......................................................................................................................... 8
    A. The Terms of the Bonjour License Do Not Grant Bodum Any, Let Alone Adequate, Quality Control over Bonjour's Licensed Products ............................... 8
    B. There Is No Evidence Bodum Has Conducted Actual Quality Control Over the Licensed Bonjour Products ...................................................................... 11
VII. CONCLUSION .................................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................... 7

*Barcamerica Int'l USA Trust v. Tyfield Imports, Inc.*,
   289 F.3d 589 (9th Cir. 2002) ............................................................................... passim

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................... 7

*Eva's Bridal Ltd. v. Holonick Enters., Inc.*,
   639 F.3d 788 (7th Cir. 2011) ...................................................................................... 2

*FreecycleSunnyvale v. The Freecycle Network*,
   626 F.3d 509 (9th Cir. 2016) .............................................................................. 7, 8, 10

*Halo Mgmt., LLC v. Interland, Inc.*,
   308 F.Supp.2d 1019 (N.D. Cal. 2003) ........................................................................ 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S.Ct. 1377, 1391 (2014) ....................................................................................... 1

*Lopez v. Board of Trs. of Univ. of Illinois at Chicago*,
   344 F. Supp. 2d 611 (N.D. Ill. 2004) ........................................................................... 7

*Stanfield v. Osborn Indus., Inc.*,
   52 F.3d 867 (10th Cir. 1995) ............................................................................ 1, 10, 12

*Taco Cabana, Inc. v. Two Pesos, Inc.*,
   932 F.2d 1113 (5th Cir. 1991) ................................................................................... 10

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1995) ................................................................................... 10

**Statutes**

15 U.S.C. § 1121 ................................................................................................................ 2

15 U.S.C. § 1125(a) ........................................................................................................... 2

28 U.S.C. § 1391 ................................................................................................................ 3

28 U.S.C. §§ 1338(b) and 1367 ......................................................................................... 3

Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq. .................................. 2

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................................ 7

I.  INTRODUCTION

Bodum USA, Inc. ("Bodum") has abandoned its alleged trade dress by granting a "naked license" of that alleged trade dress. Thus, Bodum has no trade dress rights to assert in the above-captioned matter, entitling A Top New Casting, Inc. ("A Top") to summary judgment on all counts in Bodum's Complaint.

The owner of trademark has not only a right to license the use of his trademark to others, but also a concurrent duty to exercise control and supervision over the licensee's use of the mark. *Barcamerica Int'l USA Trust v. Tyfield Imports, Inc.*, 289 F.3d 589, 595-96 (9th Cir. 2002). The critical question is whether the plaintiff sufficiently policed and inspected its licensee's operation to guarantee the quality of the products the licensee sold. *Stanfield v. Osborn Indus., Inc.*, 52 F.3d 867, 871 (10th Cir. 1995) (abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1391 (2014)). A Top moves for summary judgment on all counts of Bodum's complaint because Bodum[1] granted a "naked" license of its alleged trade dress[2] (the "Bodum Trade Dress")[3] and failed in that duty. In particular, as part of a settlement of litigation Bodum granted Culinary Parts Unlimited, Inc., the owner of the Bonjour brand, a license in the Bodum Trade Dress (the "License"). While the License did include purported quality control provisions, the provisions failed to grant Bodum actual quality control. Additionally, there is no evidence Bodum ever carried out any quality control. Because neither the terms of the license nor Bodum's actual activity constituted quantity control over Bonjour's products embodying the Bodum Trade Dress, Bodum has nakedly licensed the trade dress. This

---

[1] The named plaintiff in the case is Bodum USA, Inc. SOMF 1. The party granting the License was Bodum, Inc., the predecessor to Bodum USA, Inc. SOMF 15. For convenience, these parties shall both be referred to as Bodum.
[2] By bringing this motion, A Top does not admit that Bodum has any valid trade dress rights.
[3] The Bodum Trade Dress consists of a frame, feet, handle, lid, safety lid, and carafe and plunger. SOMF 10.

naked license extinguishes any rights Bodum might have had in its alleged trade dress. *Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 639 F.3d 788, 790 (7th Cir. 2011).

This motion disposes of every issue in this case. All of the counts in Bodum's Complaint are based on A Top's promotion and sale of its Chrome SterlingPro French-press style coffee makers that allegedly "copy the look and overall appearance" of the Bodum Trade Dress, and are "confusingly similar thereto." SOMF 6, 11. Bodum alleges that A Top is acting "without authorization of Bodum" and that its activities constitute a "misappropriation" of the purported Bodum Trade Dress. SOMF 12, 13. But, since Bodum abandoned its trade dress by granting a "naked license" of its purported trade dress, Bodum has no rights to enforce. There are no genuine issues regarding the material facts surrounding Bodum's naked license to Bonjour, and A Top is entitled to summary judgment that Bodum has abandoned its trade dress through naked licensing as a matter of law.

## II. NATURE AND STAGE OF PROCEEDINGS

Bodum sued A Top on March 7, 2016, asserting claims of trade dress infringement under 15 U.S.C. § 1125(a), common law unfair competition, and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq. SOMF 1. Each of the three counts attacks A Top's promotion and sale of A Top's Chrome SterlingPro French-press style coffee makers that allegedly copy the look and overall appearance of the Bodum Trade Dress. SOMF 6. Fact discovery closed on December 13, 2016. SOMF 5. The parties are currently engaging in expert discovery.

## III. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over Count I of Bodum's Complaint (federal trade dress infringement) pursuant to 15 U.S.C. § 1121. SOMF 2. Bodum has alleged that Counts II and III (unfair competition and violation of 815 ILCS § 510/1 et seq.) are substantially

2

related to the claims in Count I, and that this Court therefore has jurisdiction over Counts II and III pursuant to 28 U.S.C. §§ 1338(b) and 1367. SOMF 3.

Defendant A Top, a New York corporation with a principal place of business in Buffalo, New York, does not contest personal jurisdiction. SOMF 4. A Top admits that venue is appropriate in this Court under 28 U.S.C. § 1391. SOMF 4.

## IV. FACTUAL BACKGROUND

### A. French-Press Style Coffee Makers—Generally

This case is about French press style coffee makers. A French press style coffee maker is a non-electric, manually-operated coffee maker that generally comprises a cylindrical flask or carafe (often constructed of glass), a handle affixed to the cylinder, a base, and a lid with a piston or "plunger." SOMF 8.

To brew coffee in a French-press style coffee maker, the user places ground coffee in the bottom of the carafe and adds boiling or near-boiling water. After brewing for a few minutes, the plunger—which has a mesh-like construction, and acts as the coffee filter—is used to press the coffee grounds to the bottom of the carafe. SOMF 9.

### B. The Bodum And Bonjour French Presses

This motion implicates two French presses, Bodum's Chambord French Press and a French press branded by Bonjour called the Monet French Press. Shown below is the Bodum Chambord French Press, which Bodum alleges is the subject of the Bodum Trade Dress.



SOMF 7.

The Bonjour Monet French Coffee Press is shown below. With its associated family (12 cup, 8 cup, and 3 cup), the Monet French press is the subject of the License from Bodum between Culinary Parts Limited, Inc. (the owner of the Bonjour brand, hereinafter "Bonjour")[4] and Bodum, is shown below.



SOMF 17.

---

[4] The Bonjour brand is now owned by Meyer Corp. SOMF 18. For convenience the licensee of the Bodum Trade Dress will be referred to as "Bonjour."

4

As can be seen, the Bonjour French press incorporates aspects of the purported Bodum Trade Dress via the License. The Bonjour Monet French Coffee Press family has been sold in the United States since at least 1996. SOMF 16, 17.

### C. Bonjour Sold Its Monet French Presses Without Quality Control

On December 17, 1996, Bodum sued Culinary Parts Unlimited, Inc., owner of the Bonjour brand, for unfair competition and other causes of action. SOMF 16. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Since entering into the License, Bonjour has sold its French press in the United States under the License, but there is no evidence Bodum ever carried out any actual quality control of Bonjour's licensed products. *See* SOMF 16, 17. When questioned on this point, Bodum's CEO, Alain Grossenbacher, was unqualified in the negative.

> Q. Does Bodum have any control over the quality of Bonjour's products?
> A. No.

SOMF 22.

---

[5] The license was part of a litigation settlement agreement that settled two cases involving Bodum. The first case was *Brady Marketing Company, Inc. v. Bodum, Inc, et al.* The second case was *Bodum, Inc. v. Culinary Parts Unlimited, Inc*. See SOMF 14, 19.

5

Mr. Joergen Bodum ("Mr. Bodum"), CEO of Bodum's parent company, Bodum AG, initially testified that Bodum performed quality control by getting and checking "samples" and through Bodum's outside counsel, David Bennett.

> Q. How does Bodum do quality control of the Bonjour French press?
> A. As I remember, we **got** samples that we **checked**. And then I know that David **went** to the booth—David has, since we started, gone to the housewares shows every year to look for past copies. And he also **looked** at the quality of the BonJour products.

SOMF 23 (emphasis added). Mr. Bodum also admitted that he knew of no evidence regarding quality control conducted by Bodum regarding Bonjour's licensed products, that he did not know if quality control was currently being performed by Bodum on Bonjour products, and that he could not remember the last time Bodum tested a Bonjour licensed product for quality.

> Q. So do you have any evidence of this quality control taking place?
> A. No, not here.
> Q. Is there any evidence that exists?
> A. I don't know.
> …
> Q. Do you have any evidence of this quality control taking place?
> A. No.
> …
> Q. Where does Bodum keep the records of this quality control?
> A. Probably at the factory. But after ten years, they're taken out.
> Q. After ten years, what?
> A. They are des---we only have to keep them for ten years.
> Q. Well, is Bodum doing quality control at BonJour today?
> A. I don't know.
> …
> Q. When is the last time you saw a Bonjour product being tested?
> A. I don't remember.

SOMF 24.

6

## V. THE APPLICABLE LAW

### A. Summary Judgment

Summary judgment "shall be rendered" when the evidence "show[s] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Lopez v. Bd. of Trs. of Univ. of Ill. at Chi.*, 344 F. Supp. 2d 611, 612 (N.D. Ill. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant has the burden of establishing the lack of a genuine issue of material fact, and the evidence is construed in a light most favorable to the non-movant. *Id.* (citing *Anderson*, 477 U.S. at 255; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The non-moving party has the burden of presenting "definite, competent evidence to rebut the summary judgment motion." *Lopez*, 344 F. Supp. 2d at 612.

### B. Naked Licensing

Naked licensing occurs when the licensor licenses its trademark or trade dress without adequate quality control over the licensee or when the licensor does not carry out his quality control duties. Naked licensing is inherently deceptive and constitutes abandonment of rights to the trademark by the licensor. *Barcamerica*, 289 F.3d at 598. Consequently, when the licensor fails to exercise adequate quality control over the licensee, a court may find that the trademark owner has abandoned the trademark, in which case the owner is estopped from asserting rights to the trademark. *Id.* at 596 (*cited by FreecycleSunnyvale v. The Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2016) (affirming summary judgment of naked licensing)); *see also* Restatement (Third) of Unfair Competition § 33 (1995) ("Failure of the licensor to exercise reasonable control over the use of the designation by the licensee can result in abandonment of the designation under the rule stated in § 30(2)(b).").

As the Seventh Circuit stated:

> Trademark law requires that "decision making authority over quality remains with the owner of the mark." How much authority is enough can't be answered, generally, the nature of the business, and customers' expectations, both matter. Ours is the extreme case, plaintiffs [the trademark owners] had, and exercised, *no* authority over the appearance and operations of defendants [third party users of the trademark] business, or even over what inventory to carry or avoid. That is the epitome of the naked license.

*Eva's Bridal*, 639 F.3d at 791 (affirming dismissal of trademark suit due to naked licensing) (emphasis in original). To prove abandonment due to naked licensing, the party asserting naked licensing must meet a "stringent standard of proof." *FreecycleSunnyvale*, 626 F.3d at 514.

## VI. ARGUMENT

Both the lack of quality control in the terms of the License and Bodum's failure to perform adequate quality control of Bonjour's licensed products show that Bodum engaged in naked licensing and is estopped from asserting any rights in the Bodum Trade Dress. *Barcamerica*, 289 F.3d at 596 (affirming finding of a naked license). A Top has met the "stringent standard of proof" necessary to show Bodum has nakedly licensed its purported trade dress.[6]

### A. The Terms of the Bonjour License Do Not Grant Bodum Any, Let Alone Adequate, Quality Control over Bonjour's Licensed Products

[redacted]

---

[6] It is unclear whether the "stringent" standard requires proof by a preponderance of the evidence, clear and convincing evidence, or some other standard. *FreecycleSunnyvale*, 626 F3.d at 514 (surveying other circuit court cases considering the burden of proof in naked licensing cases). Although the standard of proof for proving naked licensing is unclear, A Top's has proven Bodum's abandonment of its trade dress by both the preponderance of the evidence and clear and convincing evidence.



███████████████████████████

███████████████████████████

███████████████████████████

██

███████████████████████████

█████████████ While parties in other cases have argued that leaving the responsibility of quality control on the licensee is acceptable, such arrangements require the licensor and licensee be in a "special" or "close working relationship" to establish adequate quality control. *FreecycleSunnydale*, 626 F.3d at 518; *Barcamerica*, 289 F.3d at 597; *Taco Cabana, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121-22 (5th Cir. 1991); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1017-18 (9th Cir. 1995); *Stanfield*, 52 F.2d at 872. Here, there is no such relationship. Indeed, the License was entered into to end litigation filed by Bodum against Bonjour, which suggests a hostile relationship between the parties. *See Stanfield*, 52 F.2d at 872 (relationship involving no contact except litigation was "neither close nor successful."). In any event, there is no evidence in the record of a "special" or "close working relationship" between Bodum and Bonjour to support such an argument.

███████████████████████████

███████████████████████████

▬▬▬ As McCarthy explains, 'It is important to keep in mind that 'quality control' does not necessarily mean that the licensed goods or services must be of 'high' quality, but **merely of equal quality, whether that quality is high, low or middle**. The point is that **customers are entitled to assume that the nature and quality of goods and services sold under the mark at all licensed outlets will be consistent and predictable**." *Barcamerica*, 289 F.3d at 598 (quoting McCarthy § 18:55) (emphasis added).

Bodum, by the express terms of the License, nakedly licensed the Bodum Trade Dress to Bonjour. There are no material issues of fact with respect to the terms of the License, and A Top is entitled to summary judgment that Bodum abandoned its purported Trade Dress as a matter of law.

### B. There Is No Evidence Bodum Has Conducted Actual Quality Control Over the Licensed Bonjour Products.

Moreover, there is no evidence in the record that Bodum ever actually conducted adequate, if any, quality control over Bonjour's licensed products. Bodum's CEO, Mr. Grossenbacher, testified as follows:

> Q. Does Bodum have any control over the quality of Bonjour's products?
> A. No

SOMF 22. The CEO of the company responsible for conducting quality control would know if that quality control was being carried out. Mr. Grossenbacher testified plainly that Bodum has no such control.

The testimony of Mr. Bodum proves that adequate quality control has not been and is not being carried out. At best, Mr. Bodum testified that Bodum, at some point in the past, perhaps more than ten years ago, may have conducted a cursory review of a limited subset of Bonjour's licensed products.

11

First, Mr. Bodum testified that some sort of quality review may have occurred in the past when Bodum "got samples that we checked" and Bodum's outside counsel looked at Bonjour products at trade shows.

> Q. How does Bodum do quality control of the Bonjour French press?
> A. As I remember, we **got** samples that we **checked**. And then I know that David **went** to the booth—David has, since we started, gone to the housewares shows every year to look for past copies. And he also **looked** at the quality of the BonJour products.

SOMF 23 (emphasis added). David is David Bennett, Bodum's outside counsel. Mr. Bennett is not qualified to determine manufacturing or design quality, and in any case, there is no evidence he has done or is currently doing actual quality control. Quality control must involve more than just a cursory visual inspection at a trade show. *See Stanfield*, 52 F.3d at 871-72 (visual review of products and occasionally reviewing promotional materials and advertising is not evidence of actual control). ████████████████████████████████████████████████████████

With respect to the samples Bodum "got" and "checked," Mr. Bodum testified he had no evidence of quality control conducted by Bodum. Tellingly, Mr. Bodum did not know if quality control was going on currently, and he could not remember the last time Bonjour's licensed products were tested.

> Q. So do you have any evidence of this quality control taking place?
> A. No, not here.
> Q. Is there any evidence that exists?
> A. I don't know.
> …
> Q. Do you have any evidence of this quality control taking place?
> A. No.
> …
> Q. Where does Bodum keep the records of this quality control?
> A. Probably at the factory. But after ten years, they're taken out.
> Q. After ten years, what?

12

> A. They are des---we only have to keep them for ten years.
> Q. Well, is Bodum doing quality control at BonJour today?
> A. I don't know.
> …
> Q. When is the last time you saw a Bonjour product being tested?
> A. I don't remember.

SOMF 24. Such infrequent and indeterminate efforts to monitor quality are not sufficient to establish quality control over licensed products. *Halo*, 308 F. Supp. 2d at 1030. What is required is a systematic, ongoing program of quality assurance that serves the purpose for which it is in place. *See Barcamerica*, 289 F.3d at 597 ("[Plaintiff's] conclusory statements as to the existence of quality controls is insufficient to create a triable issue of fact on the issue of naked licensing. While [Plaintiff's wine] tastings perhaps demonstrate a minimal effort to monitor quality, [Plaintiff] fails to state when, how often, and under what circumstances he tastes the wine.")

There is no evidence that Bodum tests samples of Bonjour's licensed products for quality. There is no evidence that Bodum controls (or has the right to control) the quality of Bonjour's products. There is no evidence that Bodum has carried out its duty as licensor. Thus, Bodum has abandoned the purported Bodum Trade Dress by granting a naked license to Bonjour.

## VII. CONCLUSION

For the reasons stated herein, there is no genuine issue as to any material fact, and A Top is entitled to judgment as a matter of law that Bodum has granted a naked license of its asserted trade dress. A Top respectfully requests that this Court grant summary judgment in favor of A Top as to each count of Bodum's Complaint in this action as Bodum has no enforceable trade dress. "Plaintiffs had, and exercised *no* authority over the appearance and operations of defendant's business. That is the paradigm of a naked license." *Eva's Bridal*, 639 F.3d at 791.

13

Dated: March 16, 2017						Respectfully submitted

						By:  /s/ Thomas G. Pasternak
							Thomas G. Pasternak
							Robyn Bowland
							Akerman LLP
							71 South Wacker Drive
							46th Floor
							Chicago, Illinois 60606
							Tel. (312) 634-5700
							Fax. (312) 424-1900
							thomas.pasternak@akerman.com

							*Attorneys for Defendant A Top New Casting, Inc.*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2017, the foregoing **A TOP NEW CASTING, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NAKED LICENSING** was filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

                                                   */s/ Thomas G. Pasternak*
                                                   Thomas G. Pasternak