UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BODUM USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> A TOP NEW CASTING, INC., <br><br> Defendant. | Case No. 1:16-cv-02916 <br><br> Judge Matthew F. Kennelly <br><br> JURY TRIAL DEMANDED <br><br> **FILED UNDER SEAL** |

### A TOP NEW CASTING, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NAKED LICENSING

Plaintiff Bodum USA, Inc. ("Bodum") makes three arguments in its opposition to Defendant A Top New Casting, Inc.'s ("A Top") Motion for Summary Judgment of Naked Licensing. All three fail. REDACTED

Second, Bodum relies on the cursory inspections done by its outside counsel at a trade show (and nonexistent factory inspections), which are deficient by Bodum's own admissions as to the correct way to test the quality of French Press coffee pots. Finally, it claims reliance on BonJour's own quality control efforts, which is improper given the circumstances here, including the relationship between the parties as litigation adversaries and competitors, and the absence of any evidence of reliance or quality control efforts by BonJour. For all these reasons and the reasons cited in its opening brief, A Top's motion should be granted.

**STATEMENT OF FACTS**

As an initial matter, in an apparent attempt to create genuine issues of fact where none exist, Bodum conjures up "facts" regarding its quality control efforts.[1] Bodum claims that REDACTED Bodum's factory has performed certain quality control checks of BonJour's products. (Dkt. No. 61 ("Response Brief") at pp. 4, 10.) This is just not the case and Bodum has produced no records or other tangible evidence to show that this occurred. It instead mischaracterizes Mr. Bodum's testimony regarding factory testing.

Mr. Bodum's testimony was cited for this proposition as follows:

> Q. How does Bodum do quality control of the BonJour French Press?
> A. As I remember, we got samples that we checked . . .

Response Brief at pp. 4, 10; see Dkt. No. 50-2, Statement of Material Facts at 23 (hereinafter "SOMF"). Here, he is talking about the BonJour samples that were checked at the execution of the License Agreement, not periodic testing. See Response Brief at p. 4. Bodum further relied on the following statement by Mr. Bodum:

# REDACTED

Response Brief at pp. 4 10; see Dkt. No. 62, Plaintiff's Statement of Additional Facts at 5 (hereinafter "SOAF"). Again, Mr. Bodum was talking about the initial testing of BonJour

---

[1] Bodum never actually argues that these quality control "facts" are material or create genuine factual issues.

2

products done at the time of the licensing transaction, not any ongoing testing.[2] This is confirmed by Mr. Bodum's further testimony about the lack of records of the testing. He testified that Bodum does not keep records of testing older than ten years old. He did not say there were any current records, nor has Bodum produced any.

> Q. Where does Bodum keep the records of the quality control?
> A. Probably at the factory. But after ten years, they're taken out.
> Q. After ten years, what?
> A. They are des---we only have to keep them for ten years.

SOMF 24. Bodum has no evidence of any ongoing factory testing done on BonJour products. If it did it certainly would have produced it to try to defeat this motion. The only purported quality control done was Mr. Bennett's completely inadequate inspections, as discussed below.

## LEGAL STANDARD

Bodum misstates the test that is applicable here to determine naked licensing, stating with no basis or citation that A Top must show a complete "dearth" of quality control efforts. Response Brief at p. 14. The test is rather a circumstantial one—when determining whether a licensor has retained sufficient control over a licensee to avoid naked licensing, the Seventh Circuit asks "whether 'the control retained by the licensor [is] sufficient under the circumstances to insure that the licensee's goods or services would meet the expectations created by the presence of the trademark.'" *Eva's Bridal, Ltd. v. Halanick Enters., Inc.*, 639 F.3d 788, 790 (7th Cir. 2011); *Slep-Tone Entm't Corp. v. Coyne*, 141 F. Supp. 3d 813, 824 (N.D. Ill. 2015); *see also* Restatement (Third) of Unfair Competition § 33 cmt c (1995) (hereinafter "Restatement").

---

[2] REDACTED

> [When] the licensee's use is on goods similar or identical to those produced by the trademark owner, purchasers may be likely to assume that the goods are actually manufactured by the owner of the mark. Greater control by the licensor may then be necessary to safeguard the interests of consumers who may purchase the goods on the basis of the licensor's reputation for quality.

Restatement § 33 cmt c. Here, greater control is required because the BonJour products are virtually identical to the Bodum products. SOMF 7, SOMF 17.

## ARGUMENT

**I.     THE LICENSE AGREEMENT FAILS TO GRANT BODUM SUFFICIENT CONTROL OVER THE LICENSED TRADE DRESS**

**REDACTED**

  **REDACTED**

Indeed, as acknowledged by the Seventh Circuit and this Court, the licensor must retain control "sufficient under the circumstances to insure that the licensee's goods or services would meet the expectation created by the presence of the trademark" to avoid naked licensing. *Eva's Bridal*, 639 F.3d at 790; *Slep-tone*, 141 F. Supp. 3d at 824. **REDACTED**

*Eva's*

*Bridal*, 639 F.3d at 790-91; *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1030-31 (N.D. Cal. 2003).

Bodum's purported bright-line rule, that the existence of any purported quality control provisions in a license agreement precludes summary judgment, is unsupported by the cases Bodum cites. In *Slep-Tone,* the court evaluated the terms of the license at issue and found that the license granted the licensor some control over the quality of its licensee's services. *Slep-Tone*, 141 F. Supp. 3d at 825 ("Slep-Tone, by contrast, has retained **some control** over the quality of its licensees' services—not much, but some.") (emphasis added). The denial of summary judgment in *Slep-Tone* hinged not on the mere existence of a quality control term, but rather the court's holding that the term provided some actual control over the quality of the relevant services and the failure of the parties to provide sufficient facts to determine whether this minimal control was sufficient. *Id*. Moreover, as Bodum later concedes when discussing *Halo*, a purported quality control provision can be insufficient to grant the licensor quality control. Response Brief at p. 9.

Additionally, Bodum's claim that the Restatement "not[es] that contractual provisions addressing quality control may be insufficient by themselves **only when** the licensee is inexperienced or the goods or services are particularly complex" is misleading at best. Response Brief at p. 6 (emphasis added). The Restatement actually says relying on a licensee to abide by contractual provisions may be adequate in certain circumstances, not that any purported quality control provision, regardless of what the provisions actually say, are *per se* sufficient unless the licensee is inexperienced or the goods are complex.

5

> If the trademark owner is justified in relying on the reputation and expertise of the licensee, the existence of contractual obligations undertaken by the licensee **may be sufficient** in itself to constitute reasonable quality control under the rule stated in this Section, at least in the absence of evidence indicating significant deviations from the agreed standards or procedures. In other cases, the risk of deviations in quality may be too great to permit reliance solely on the presence of contractual obligations. Thus, if the licensee is inexperienced, or if the goods or services are particularly complex or otherwise require careful supervision, or if the risk to the public from inadequate supervision is substantial, greater control such as period inspections of facilities or products may be necessary.

Restatement § 33 cmt c.  REDACTED


# REDACTED

## REDACTED


First, Bodum's argument that a trademark licensor would not enter into "a license agreement lacking any quality control provisions" because it "could, in certain circumstances, extinguish the licensor's protectable trade dress rights" ignores the cases cited by A Top and acknowledged by Bodum where trademark licensors entered into license agreements that did not contain such provisions. Response Brief at pp. 6-7; s*ee Barcamerica, Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002); *Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 871 (10th Cir. 1995). REDACTED

---

# REDACTED

REDACTED

Response Brief at p. 8.

REDACTED

Instead, Bodum misreads both *Land O'Lakes* and *Halo*. In its Response Brief, Bodum claims that *Land O'Lakes* supports the proposition that REDACTED

Response Brief at p. 8. But, the holding that the licensor had not nakedly licensed its trademark in *Land O'Lakes* was not based on REDACTED

—it was based on the court's determination that "[u]nder the circumstances shown here, defendant's reliance on its licensee's quality control may be deemed the taking of reasonable measures to protect the quality of the goods bearing the mark." *Land O'Lakes*

---

[4] REDACTED

REDACTED

*Creameries, Inc., v. Oconomowoc Canning Co.*, 221 F. Supp. 576, 581 (E.D. Wisc. 1963).  In particular, the licensor in *Land O'Lakes* showed it (1) retained the right of supervision over all labels and products bearing the mark, (2) relied on the quality testing conducted by the licensee, (3) was familiar with the quality of the suppliers of the licensee's product, and (4) would likely receive complaints regarding the quality of the products as its name was on the label.  *Id.* at 581.  Bodum has shown none of these circumstances REDACTED

[6] *Land O'Lakes* does not stand for such a broad proposition.

Bodum also undermines its own arguments REDACTED when attempting to distinguish *Halo*.  The court in *Halo* found that "neither of these [purported quality control] terms permit [the licensor] to terminate the license should [the licensee] derogate its supposed quality obligations."  *Halo*, 308 F. Supp. 2d at 1029.  REDACTED

*Halo* supports A Top's position—a license agreement may contain purported quality control provisions that fail to

---

[6] REDACTED

8

provide quality control over a licensee's products. REDACTED

There are no disputes of material fact regarding the terms of the License Agreement, and A Top is entitled to summary judgment as a matter of law.

## II. BODUM'S QUALITY CONTROL EFFORTS ARE DEFICIENT

Bodum relies on two types of quality control in its Response—alleged factory testing and Mr. Bennett's inspections. Neither one is sufficient to defeat summary judgment here.

As made clear above, there was and is no ongoing factory testing other than that done at the time of the License Agreement. At that time, Bodum did the type of quality control testing required by its own admission REDACTED

*See* SOMF 24; SOAF 5.

As to the Bennett inspections, first and foremost, Mr. Bennett is a lawyer with no background in engineering or science, not an expert in assessing the quality of French Press coffee pots. He tries to create some expertise by calling on his years of litigation for Bodum (which include representing Bodum in this action), but that litigation experience clearly does not give him expertise in testing mechanical devices made of glass and steel.

Second, Mr. Bennett's inspection was not adequate testing. It was visual and involved holding the product. Bennett Decl. ¶ 8. When Bodum wanted to test products, it knew how to do so REDACTED SOAF 5. Mr. Bodum's own words describes the type of testing that would be adequate quality control

9

testing—REDACTED

*Id*.

Third, even if what Mr. Bennett did was adequate testing, it was not done on representative samples of BonJour products. Rather, it was done on those products selected to be shown at a trade show, which no doubt were the best BonJour products, not representative products. SOAF 8-11. Quality control should be done on representative samples randomly selected, not on the best of the best.

So at bottom, Bodum's "quality testing" was nothing more than an unqualified tester performing inadequate testing on an unrepresentative sample. And notably, none of Bodum's claims of quality control are accompanied by any records or documents.

Bodum claims that in twenty years the Licensed Products have not changed. Response Brief at pp. 5, 10. How can it make that claim without comparing the twenty-year old product to the current product? It cannot, and the claim is frivolous and untrue. For example, it went unnoticed by Mr. Bennett that BonJour added a French Press made of polycarbonate, as opposed to glass, to its line in 2003 (also further evidencing the lack of factory testing). *Compare* Second Pasternak Decl. at ¶ 2 & Ex. 11 to Second Pasternak Decl. at ¶ 3 & Ex. 12. Likewise false is Bodum's claim that there have been no quality issues with BonJour products. *See* Second Pasternak Decl. at ¶ 4 & Ex. 13 (various customer complaints about the BonJour product).

### III. BODUM MAY NOT RELY ON THE LICENSEE'S QUALITY CONTROL EFFORTS

In claiming that it may rely on BonJour's quality control efforts, Bodum: a) ignores completely the abundant law cited by A Top that says otherwise; b) misstates the law Bodum relies on; c) provides no evidence of BonJour's quality control efforts; and d) provides no evidence of any actual reliance by Bodum.

### A. Bodum Ignores A Top's Case Law

In its opening brief, A Top cited abundant law that states for there to be reliance, there must be a special or close working relationship between the licensor and licensee. Dkt. No. 50-1 at p. 10 (hereinafter "Opening Brief"). Bodum doesn't acknowledge or attempt to distinguish these cases, because it cannot.

### B. Bodum Misrepresents the Law on Reliance on Licensee's Efforts

The law cited by Bodum does not support its position. Bodum claims that the law is that "when a license agreement has been in place for many years without evidence of consumer complaint regarding the quality of the licensee's goods, the licensor can rely on the licensee for quality control as a reasonable measure to protect the quality of the goods." Response Brief at p. 12. The cases Bodum cites only show that reliance is very fact specific (as acknowledged by the Seventh Circuit in *Eva's Bridal*), and none of Bodum's authorities stand for its asserted proposition. *TMT* only stands for the proposition that reliance was justified where circumstances are present that are not present here. In *TMT*, the defendant/licensee argued that the licensor had abandoned its trademark by nakedly licensing the trademarks to the defendant. However, the court found that the licensor had "control of the manufacture of the basic product" in addition to the lack of evidence of inadequate quality control by the defendant/licensee. *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997). The defendant/licensee in *TMT* was a former distributor of the licensor, not a competitor who was manufacturing its own goods separate from the licensor. *Id.* at 880. Bodum has not asserted it has control over the manufacture of BonJour's licensed products, and Bodum and BonJour are competitors, not working together as manufacturer/distributor. Thus, *TMT* is inapposite.

*Land O'Lakes* stands only for the proposition that reliance was justified in the circumstances present there. *See infra* at p. 7.

Finally, the Restatement only states that *if the licensor is justified* on relying on the licensee's reputation and skill, contractual provisions may be sufficient to constitute quality control. Restatement §33 cmt c. The key word is "justified." Bodum has made no argument as to why it is justified to rely on BonJour's quality control efforts and, given the nature of the relationship, it was not.

What these cases and the Restatement do show is that the issue of whether reliance is appropriate is very fact specific and there is no bright line rule. Bodum has presented no facts showing that reliance is appropriate here. Bodum fails to argue any special relationship between the parties, or other circumstances justifying reliance, instead relying on its misinterpretation of case law. As pointed out in A Top's Opening Brief, the parties are litigants and competitors, the opposite of the circumstances in the cases that found reliance to be appropriate. Opening Brief at p. 10.

        C.        **No Evidence of BonJour Quality Control**

Bodum similarly presents no evidence of the BonJour quality control efforts it supposedly relied on. Once again, Bodum argues with no support.

        D.        **No Evidence of Reliance**

Likewise, Bodum presents no evidence of its reliance on BonJour's purported quality control—it is just a convenient argument. Surely if there was reliance, Bodum would have presented evidence of it. It has not. Indeed, if in fact Bodum relied on BonJour's quality control, it would not have felt the need to conjure up evidence of its own purported quality control through the Bennett Declaration. Bodum cannot have it both ways.

In sum, Bodum's reliance argument is just that—mere attorney argument, with no citations to facts or the record. Would not Mr. Bodum or Mr. Grossenbacher have signed a declaration saying so if Bodum did, indeed, rely on BonJour's quality control efforts?

## **CONCLUSION**

For the foregoing reasons and the reasons in its Opening Brief, the Court should grant A Top New Casting, Inc.'s Motion for Summary Judgment of Naked Licensing.

Dated: April 25, 2017                                                             Respectfully submitted,

By:     */s/ Thomas G. Pasternak*
Thomas G. Pasternak
Robyn Bowland
Akerman LLP
71 South Wacker Drive
46th Floor
Chicago, Illinois 60606
Tel. (312) 634-5700
Fax. (312) 424-1900
thomas.pasternak@akerman.com

*Attorneys for Defendant A Top New Casting, Inc.*

13

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a copy of the foregoing, A Top New Casting, Inc.'s Reply in Support of Its Motion for Summary Judgment of Naked Licensing, was filed on April 25, 2017 via the Court's CM/ECF system, which will automatically send notices to all counsel of record.

                                                          */s/ Thomas G. Pasternak*
                                                          Thomas G. Pasternak