IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BODUM USA, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 16 C 2916 |
| A TOP NEW CASTING, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Bodum USA, Inc. (Bodum) has sued defendant A Top New Casting, Inc. (A Top) for trade dress infringement. Bodum alleges that A Top infringed Bodum's CHAMBORD® trade dress by selling and promoting a French press coffeemaker that copies the look and overall appearance of Bodum's CHAMBORD® coffeemaker. A Top maintains that Bodum relinquished its rights to enforce its trade rights when it granted a third-party company a purportedly "naked" license to the CHAMBORD® design. A Top has moved for summary judgment on the basis of this affirmative defense. For the reasons stated below, the Court denies A Top's motion.

### Background

A French press coffeemaker is a non-electric, manually operated coffeemaker that usually consists of a cylindrical beaker or carafe, a handle affixed to the cylinder, a base, and a lid with a piston or "plunger" attached to a filter screen. During the brewing process, a user adds heated water to coffee grounds lying in the carafe and presses the plunger downward, allowing the filter to separate the brewed coffee from the used

1

coffee grounds. According to Bodum, the distinctive characteristics of its CHAMBORD® French-press coffeemaker include the design of the metallic stand that holds the carafe, the design of the handle, the distinctive bands affixing the handle to the carafe, the shape of the knob on the plunger, and the carafe's dome-shaped lid.

In 1996, Bodum brought a trade dress infringement lawsuit against Culinary Parts Unlimited, Inc., another seller of French press coffeemakers. Bodum alleged that certain coffeemakers Culinary Parts sold and promoted under its BONJOUR® brand copied the look and overall appearance of the CHAMBORD® products. In 1997, as a part of an agreement settling the claims raised in that lawsuit, Bodum granted Culinary Parts a non-exclusive license to use the CHAMBORD® trade dress on certain BONJOUR® products. According to A Top, after Bodum granted that license, it failed to exercise reasonable control over the nature and quality of the BONJOUR® products that incorporated the CHAMBORD® trade dress. Thus, A Top argues, Bodum granted an uncontrolled or "naked" license, thereby abandoning any rights it had to enforce the CHAMBORD® trade dress. *See Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 639 F.3d 788, 790–91 (7th Cir. 2011) (trademark owner abandoned trademark rights by granting license to use mark without retaining any control over licensee).

Bodum argues that it continues to exercise reasonable control over the nature and quality of the BONJOUR® coffeemakers and thus denies that the license it granted to Culinary Parts was a naked license. The chief executive officer of Bodum's parent company testified that, around the time Bodum entered into the licensing agreement with Culinary Parts, it obtained samples of BONJOUR® products and conducted factory testing, including analysis of the steel and glass used in the products. Bodum also

2

relies upon the language of the licensing agreement, section 4 of which provides:

> 4. Quality Control
> A. Licensed Merchandise shall substantially and reasonable conform to the level of quality with respect to materials and workmanship as Licensee's current Monet product models.
> B. Licensee will comply with all laws, rules, regulations and requirements of any governmental or administrative body which may be applicable to the manufacture, advertising, merchandising, packaging, publicity, promotion, sale, distribution, shipment, import and export of the Merchandise and its componentry.
> C. For purposes of monitoring quality, Licensee agrees to provide Licensor, [sic] a sample of each model of Licensed Merchandise, upon request, provided Licensed Merchandise is not commercially available to Licensor.

Def.'s Stmt. of Mat. Facts ¶ 20. The licensing agreement also allows either party to terminate the agreement in the event the other party fails to perform any of its material obligations. According to Bodum, therefore, it would have the right to terminate the licensing agreement if licensed products using the CHAMBORD® trade dress failed to conform to the level of quality that Culinary Parts' Monet coffeemakers displayed at the time the parties entered into their agreement.[1]

Bodum maintains that it has continued to exercise its contractual right to monitor the quality of the licensed products. In addition to its initial factory inspection of the BONJOUR® products, Bodum emphasizes that its outside counsel, David Bennett, has examined the licensed products every year since 1997 at an annual houseware display show. Bennett has become familiar with the design and operation of French press coffeemakers through his representation of Bodum in over a dozen trade dress lawsuits. He says that each year he inspected the licensed products and did not notice any

---

[1] Another company now owns the BONJOUR® brand. For the sake of simplicity, the Court will refer to the owner of the BONJOUR® brand as "the licensee" throughout the remainder of this opinion.

change in their quality.  Specifically, during Bennett's annual examinations of the products, he visually inspected the coffeemaker's frame, feet, handle, lid, safety lid, carafe, and plunger; visually inspected and felt the steel and glass used in the product components; and opened the lid and tested the plunger.  In addition to finding no change in the quality of the licensed products, Bennett has stated that he is unaware of any products liability actions alleging defects in the licensed products since the licensing agreement has been in effect.  Bodum also notes that during that period the United States Consumer Product Safety Commission has not issued a recall of any of the licensed products.

    A Top denies that the licensing agreement grants Bodum adequate control over the BONJOUR® products.  Specifically, A Top notes that Bodum lacks any express right to inspect or supervise the licensee's operations, and A Top points to another section of the agreement indicating that Bodum shall have no responsibility for the operation of the licensee's business.  A Top also denies that Bennett's inspections of the licensed products constituted adequate quality control.  According to A Top, Bennett is unqualified to assess manufacturing or design quality.  Even if he were qualified, A Top argues, adequate quality control requires testing the products in a factory, as Bodum did initially when it entered into the licensing agreement.  In addition, A Top points to deposition testimony from Bodum executives as evidence that Bodum failed to exercise any control over the quality of the BONJOUR® products.  A Top notes that the chief executive officer of Bodum's parent company could not remember the last time he saw a BONJOUR® product being tested and could not point to any records or evidence of quality control taking place at Bodum's factory.  A Top also cites the testimony of

4

Bodum's current chief executive officer, who responded "No" when asked whether Bodum has "any control over the quality of [the licensee's] products." Def.'s Stmt. of Mat. Facts ¶ 22. Bodum explains that the current chief executive officer may be unfamiliar with the license agreement because he has only held his position since January 2016, and there has been no need to report BONJOUR® quality issues to Bodum management during his tenure.

A Top has moved for summary judgment, arguing that Bodum's naked licensing of the CHAMBORD® design bars Bodum's claim that A Top has infringed the CHAMBORD® trade dress by promoting and selling its own French press coffeemaker. The Court addresses A Top's argument below.

**Discussion**

A court will grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, a court views all evidence in the light most favorable to the party opposing the motion. *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 694 (7th Cir. 2017).

The only basis for A Top's motion for summary judgment is its contention that Bodum abandoned its rights by nakedly licensing its trade dress. A party asserting that a trademark owner engaged in naked licensing faces a heavy burden. *See* Restatement (Third) of Unfair Competition § 33 cmt. c (Am. Law. Inst. 1995) ("Because

a finding of inadequate control can result in a forfeiture of trademark rights, courts impose a heavy burden on the person asserting a lack of reasonable control by a licensor."); *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997) (same). To carry that burden, A Top must show that Bodum "allow[ed] others to use the mark without exercising reasonable control over the nature and quality of the goods, services, or business on which the mark is used by the licensee." *Eva's Bridal*, 639 F.3d at 789 (internal quotations marks and emendations omitted). For the reasons stated below, A Top has failed to carry its heavy burden in this case.

In evaluating naked licensing claims, the Seventh Circuit "tend[s] toward the view taken by the Restatement (Third) of Unfair Competition, which advocates a flexible approach but allows licensors to rely at least somewhat on the reputation and expertise of licensees." *TMT N. Am.*, 124 F. 3d at 885. Under that approach, if the trademark owner has good reason to rely on the licensee's reputation and expertise, "the existence of contractual obligations undertaken by the licensee may be sufficient in itself to constitute reasonable quality control . . . at least in the absence of evidence indicating significant deviations from the agreed standards or procedures." Restatement (Third) of Unfair Competition § 33 cmt. c. Where the risk of deviations in quality is great, however, the mere presence of contractual obligations may be insufficient, and "greater control such as periodic inspections of facilities or products may be necessary." *Id.*

A Top has not put forth evidence indicating that Bodum was unjustified in relying, in part, on the licensee's own reputation and expertise to maintain the quality of its products. Bodum carefully examined the licensed products at the outset to evaluate their quality and agreed to a provision that contractually obligated the licensee to

6

maintain that same quality.  A Top has not argued, let alone presented evidence to support an argument, that any aspect of a French press coffeemaker or of the licensee's business made a deviation in quality likely.  A Top has also failed to present evidence that there has been any change or deviation in quality.  In an attachment to its reply, A Top has provided screenshots of customer complaints about BONJOUR® products on Amazon.com.  But it has not produced evidence, or argued, that the consumer complaints about the BONJOUR® products would not also apply to the CHAMBORD® products; the complaints are thus not evidence that there has been any deviation, let alone a significant deviation, in quality.  *See Eva's Bridal*, 639 F.3d at 790 ("The sort of supervision required for a trademark license is the sort that produces *consistent* quality.") (emphasis in original).

Without evidence from a which a reasonable jury could conclude that there was a deviation in the quality of the licensed products or that Bodum was unjustified in relying on the licensee's expertise and fulfillment of its contractual obligations, A Top is not entitled to summary judgment on the ground that Bodum has engaged in naked licensing.  *See TMT N. Am.*, 124 F.3d at 886 ("Absent a significant deviation from the licensor's quality standards, a licensor does not forfeit its trademark rights through licensing agreements.").  In addition, Bodum has presented evidence that its outside counsel annually inspected the licensed products, and a reasonable jury could conclude that a visual inspection by a well-informed layperson is sufficient to ensure the consistent quality of a device as simple as a French press coffeemaker.  *Cf.* Restatement (Third) of Unfair Competition § 33 cmt. c (greater control may be necessary where licensed goods or services are "particularly complex").

A Top's arguments for the contrary conclusion are unpersuasive. It contends that a trademark holder may not rely on the expertise of the licensee to monitor quality control unless the licensor and licensee have a "special" or "close working relationship." But A Top has not cited any cases indicating that that is the law in the Seventh Circuit, which follows the Restatement's more flexible approach. A Top also argues that the licensing agreement does not grant Bodum control over quality of the licensed products because it has no express right to control the product quality by, for example, directing the licensee's manufacturing or facilities. A reasonable jury could conclude, however, that the "quality control" provision in the license agreement is a material term, such that Bodum could terminate the agreement when it became aware of quality deviations.

A Top cites to a number of cases in which courts concluded that naked licensing barred trademark holders' infringement claims. Each of those cases, however, involves the licensing of goods or services that are considerably different from the simple durable good at issue in this case or are otherwise clearly distinguishable. *See Eva's Bridal*, 639 F.3d at 791 ("extreme case" in which licensee of trademark for bridal shop failed to exercise any authority over shop's appearance, operations, or inventory); *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 518 (9th Cir. 2010) (collection of organizations devoted to facilitating recycling of goods licensed mark to members but had no means of enforcing quality of members' services); *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 598 (9th Cir. 2002) (trademark holder who licensed its mark to wine maker failed to make even "minimal effort" of sampling wines on an annual basis); *Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 871 (10th Cir. 1995) (licensor of mark had no express contractual right of control over manufacturer of

8

heating pads for swine and only extra-contractual attempt to control consisted of examination of one pad and occasional review of promotional materials); *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1030 (N.D. Cal. 2003) (licensor and licensee lacked formal quality control clause in agreement and extra-contractual quality control efforts were inconsistent and unconvincing).

## Conclusion

For the reasons stated above, the Court denies A Top's motion for summary judgment [dkt. no. 50, 51]. The case remains set for a status hearing on May 17, 2017 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 10, 2017