UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BODUM USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> A TOP NEW CASTING, INC., <br><br> Defendant. | Case No. 1:16-cv-02916 <br><br> Judge Matthew F. Kennelly <br><br> JURY TRIAL DEMANDED |

## **DECLARATION OF MARK KEEGAN**

I, Mark Keegan, under penalty of perjury, do hereby declare as follows:

1. I am a partner at Keegan & Donato Consulting, LLC and assist A Top New Casing, Inc. ("A Top") in this litigation. I prepared an expert report in this case and attach my CV as Exhibit 1.

2. It is the responsibility of the researcher to design a study that, within the confines of the artificial survey environment, seeks to replicate the marketplace experience as closely as possible. The extent to which the researcher achieves this goal has a direct bearing on the value of the resulting evidence: "the closer the survey methods mirror the situation in which the ordinary person would encounter the trademark, the greater the evidentiary weight of the survey results."[1]

3. Respondents in the Harper Study were shown the following image:

---
[1] McCarthy, 32:163.



4. It was from this exposure—and this exposure only—that respondents were expected to offer an opinion as to whether the Bodum product and the Sterling Pro product are from the same or affiliated companies. However, this image in no way represents how customers in the market for French press coffee makers, generally, or the defendant's product, specifically, encounter French press coffee makers at retail. For this reason, the Harper Study stimulus is wholly inadequate and fails to replicate the market environment in which the contested products are sold.

5. The defendant does not sell the Sterling Pro product through brick and mortar retail, but rather sells its product exclusively through Amazon.com. Thus, an expected and appropriate stimulus for a likelihood of confusion study should have presented the contested products as they appear on the Amazon.com website. This is the only means by which actual purchasers encounter the Sterling Pro French press coffee maker.

6. Indeed, the Harper Study seems to acknowledge the importance of presenting the defendant's product in the context of its "real-world online distribution"[2] within the Amazon.com retail environment, as it includes a screenshot of both parties' products as they

---

[2] Harper Study, ¶26.

appear on Amazon.com within the Harper Study's expert report.[3] Inexplicably, this marketplace presentation is not carried over to the Harper Study's methodological design.

7. Further, the Harper Study presented respondents with a stimulus that resembles neither an online marketplace nor a retail shelf. To the extent that it is attempting to approximate a brick and mortar retail shelf, the image has no basis in reality, as the defendant's product is only sold online and few, if any, brick and mortar retail stores would offer five different varieties of French press coffee makers. The image also fails as an approximation of an online retail environment as it presents no product descriptions (or any words whatsoever) and, as such, resembles no online marketplace currently in existence. The overall effect is a complete lack of providing a familiar shopping environment within which consumers can thoughtfully and properly consider the products at issue.

8. The lack of product information presented to respondents in the Harper Study stimulus is also concerning. Any consumer shopping at retail—either online or at a retail store—will be provided with key essential information about the products they are considering. Foremost among this information is branding information (e.g., brand name, product name, product description, etc.) and pricing information. The Harper Study stimulus provided respondents with none of this type of information.

9. This is problematic insofar as the branding, pricing, packaging and other commonly available information provided to consumers in an actual shopping situation often contains source-identifying information. For example, in addition to prominently featuring the "Sterling Pro" brand name, the Amazon.com listing for the Sterling Pro product notes that it is

---

[3] Harper Study, p. 15.

3

the "#1 Best Seller" in the product category.[4] The Bodum product's Amazon.com listing prominently features the Bodum brand name and Chambord sub-brand and notes that the product features a "3-part stainless steel mesh filter."[5] This and other information present on the products' respective Amazon.com listings might inform a consumer who views both products that they are not manufactured or put out by the same company, but was not shown to respondents.

10. Consumers commonly use branding and pricing information to familiarize themselves with the available options within a product category and to inform their purchase. The Harper Study ignores this reality of consumer marketplace behavior and thus fails to accurately or adequately replicate the market for the contested products thereby denying consumers the context to properly evaluate the source of the products.

11. It is also notable that the Harper Study failed to provide respondents with any instructions regarding the study stimulus. Typically, research of this type will attempt to place respondents in an appropriate shopping state of mind for answering the questions of interest. For studies of consumer packaged goods, as are typically the subject of likelihood of confusion studies, this often consists of an instruction to the respondent to "Imagine you are shopping for [product category]…" or a similar variant. In this case, the Harper Study provided no such instruction to respondents. In fact, the Harper Study did not even instruct respondents to look at the image:

---

[4] www.amazon.com/SterlingPro-French-Coffee-Press-Chrome/dp/B00DUHACEE/ref=sr_1_1?ie=UTF8&qid=1493670293&sr=8-1&keywords=sterling+pro+french+press
[5] www.amazon.com/Bodum-Chambord-French-Coffee-Chrome/dp/B00008XEWG/ref=sr_1_1?s=kitchen&ie=UTF8&qid=1493670369&sr=1-1&keywords=bodum+french+press

4



12.     It is thus unknown whether or to what extent consumers were in a shopping state of mind when answering the Harper Study's questions of interest, and how their opinions might differ from their study responses if they were appropriately framed in a marketplace scenario.

13.     An essential step in the design of any consumer survey is the selection of the appropriate study universe, or the relevant population from which the study sample is drawn.

14.     Properly defining the study universe is a crucial step in the survey process because "a survey that provides information about a wholly irrelevant population is itself irrelevant."[6]  Indeed, it has been noted that "selection of the proper universe is a crucial step, for

---

[6] Diamond, p. 377.

5

even if the proper questions are asked in a proper manner, if the wrong persons are asked, the results are like to be irrelevant."[7]

15. In a traditional likelihood of confusion study, the appropriate group from which to sample is potential purchasers of the junior user's (i.e., the second entrant to the marketplace) product.[8] Those that are the most likely to purchase the contested (i.e., junior' user's) product are considered to have the only relevant opinions regarding any potential confusion resulting from that product's presence in the marketplace.

16. In this case, the defendant, with its Sterling Pro product, is the second entrant into the market and thus the junior user. The most appropriate study universe in this case, therefore, would be potential purchasers of the Sterling Pro product.

17. The Harper Study did not define potential Sterling Pro product purchasers as its study universe, but rather those who have "purchased, or would consider purchasing, a French press coffee maker"[9] of any kind. This universe definition is problematic for a variety of reasons.

18. Because it includes all past and potential purchasers of French press coffee makers, the Harper Study universe definition is too broad. For example, the defendant only sells its Sterling Pro product online through Amazon.com. However, the Harper Study universe definition would count as qualified those respondents who have only purchased or would consider purchasing a French Press coffee maker in a retail store. Because the Sterling Pro is not sold in retail stores, such respondents would potentially never encounter the product, and their opinion is therefore not relevant to this case.

---

[7] McCarthy, 32:159.
[8] "In a traditional case claiming forward confusion…the proper universe to survey is the potential buyers of the junior user's goods or services." McCarthy, 32:159.
[9] Harper Study, ¶18.

6

19. Similarly, the Harper Study universe definition potentially includes consumers who do not shop on Amazon.com or even conduct any online shopping. The Sterling Pro product would never be in the consideration set of such consumers, and their opinions are therefore irrelevant.

20. At the same time, the Harper Study's universe definition is too narrow in that it excludes potential respondents who do not have an awareness of French press coffee makers.[10] This is an overly-restrictive measure that ignores the fact that many new, first-time purchasers enter markets, including the French press coffee maker market, every day. A coffee enthusiast that does not have an awareness of a French press coffee maker today could very well purchase one next week. Thus, a more relevant criterion that would have more accurately represented the potential market for French press coffee makers would have been to screen for participants who are potential future entrants in the French press market. This was not done in the Harper Study.

21. It is also notable that the Harper Study's questionnaire ignores measures that are commonly used by researchers to minimize sampling bias. In particular, the Harper Study fails to use masking items in the questionnaire to ensure the "double-blind" nature of data collection. For example, the Harper Study asks the screening question, "Have you ever purchased, or would you ever consider purchasing, a French Press Coffee Maker?" The phrasing of this question strongly suggests to the respondent that this survey will be about French press coffee makers and anything other than a "yes" response will likely result in elimination from participation. A more neutral phrasing of this question would be:

---

[10] Respondents who select the "That depends, what is a French Press Coffee Maker?" answer option in Question 5 of the Harper Study were excluded from participation in the study. See Harper Study at ¶

7

>Which of the following types of products, if any, have you purchased or would consider purchasing?
>
>☐ Electric mixer
>
>☐ Toaster oven
>
>☐ French press coffee maker
>
>☐ Electric kettle
>
>☐ Food processor

22. In this phrasing of the question, it is unclear to the respondent which product, if any, the survey will address. Using neutral phrasing serves an important purpose in that it minimizes the extent to which respondents can actively attempt to quality for the study by guessing the "correct" answers. Using masking items for this type of screening question has a direct impact on the quality of the study sample, as it is more likely that only true actual and potential purchasers will qualify and participate in the study.

23. As a result of the flawed universe definition and sampling methods employed by the Harper Study, the reader has no way of knowing whether the Harper Study's findings are representative of those who have purchased or would purchase a Sterling Pro French press coffee maker. For this reason, the Harper Study offers no valid or reliable findings on the issue of likelihood of confusion in this case.

24. In addition to the marketplace replication and universe deficiencies described above, the Harper Study suffers from additional methodological limitations that render its findings unreliable.

25. When designing a consumer study, the researcher is faced with the choice of removing the stimulus from view or, or alternatively, leaving the stimulus in front of respondents

when administering the relevant confusion questions. In this case, the Harper Study left the study stimulus in full view while respondents answered the relevant confusion questions.

26. One of the reasons that researchers commonly remove the product from the view of the respondent when asking the relevant confusion questions is to encourage consumers to make a cognitive comparison of the marks or products at issue as they would in a real-life shopping scenario. By making the comparison mentally, without the products in view, replicates how consumers tend to encounter products and brands while shopping.

27. Removing the products from view tends to elicit the most objective opinions from consumers regarding confusion, as their assessments are necessarily based on recall and cognition rather than forensic examination. Indeed, when a consumer evaluates a product for potential purchase in the marketplace, they do not have a researcher asking them to compare products on a shelf as they are considering them. Thus, it often does not make sense to do this in the survey environment.

28. The Harper Study leaves the study stimulus in front of respondents when administering the relevant likelihood of confusion questions. In this way, the Harper Study allows the more relevant cognitive element to fall to the wayside, and simply subjects respondents to a "matching game."

29. The results of the matching game posited by the Harper Study simply reflect the respondent's ability to pick out two French press coffee makers of a similar (not necessarily infringing) design. The results are not reflective of the extent to which, if at all, relevant consumers in the marketplace would be confused as to the source origination of the contested products.

9

30. Although it was misreported in the Harper Study, 129 respondents indicated a belief that the Bodum and Sterling Pro products were from the same or affiliated sources and did not select any other products as being the same or affiliated. In contrast, 81 respondents mistakenly identified one or more of the control products as being the same or affiliated with Bodum, Sterling Pro, or each other. This represents the "noise" level, or baseline confusion, within the Harper Study sample that should be deducted from the overall confusion finding to yield net confusion attributable to the contested trademark issue in this case.

31. The net level of likelihood of confusion in the marketplace, as demonstrated by the Harper Study data, is 9.8 percent ((129-81)/488). This finding, which is attained through the proper treatment of the control data (a task at which the Harper Study failed), shows a very low level of likelihood of confusion between the Bodum product and the Sterling Pro product among likely purchasers of French press coffee makers. In fact, at just 9.8 percent confusion, the Harper Study provides evidence against likelihood of confusion between the contested products among relevant consumers.

Dated: September 25, 2017    By: _____
                                  Mark Keegan