IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BODUM USA, INC., | |
| Plaintiff, | |
| v. | No. 1:16-cv-02916 |
| | Honorable Matthew F. Kennelly |
| A TOP NEW CASTING INC., | JURY TRIAL DEMANDED |
| Defendant. | |

**BODUM USA, INC.'S RESPONSE TO A TOP NEW CASTING, INC.'S
STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION
TO EXCLUDE THE EXPERT TESTIMONY AND EVIDENCE OF
RHONDA HARPER REGARDING LIKELIHOOD OF CONFUSION,
FOR SUMMARY JUDGMENT OF NO LIKELIHOOD OF CONFUSION,
AND FOR SUMMARY JUDGMENT OF NO SECONDARY MEANING**

Plaintiff, Bodum USA, Inc. ("Bodum"), in accordance with Local Rule 56.1(b), responds

to Defendant A Top New Casting Inc.'s ("A Top") Statement of Material Facts in Support of Its

Motion to Exclude the Expert Testimony and Evidence of Rhonda Harper Regarding Likelihood

of Confusion, for Summary Judgment of No Likelihood of Confusion, and for Summary

Judgment of No Secondary Meaning.

<u>Background</u>

**PARAGRAPH NO. 1:**

Bodum USA, Inc. ("Bodum") sued A Top on March 7, 2016, asserting claims of trade
dress infringement pursuant to 15 U.S.C. § 1125(a) (Count I), unfair competition (Count II), and
violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510/1 et seq.)
(Count III). *See* Dkt. No. 1 at ¶ 1.

**RESPONSE:**

Bodum admits the allegations of Paragraph 1.

**PARAGRAPH NO. 2:**

According to Bodum's Complaint, this Court has subject matter jurisdiction over Count I (trade dress infringement) under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a). Dkt. No. 1 at ¶ 6.

**RESPONSE:**

Bodum admits the allegations of Paragraph 2.

**PARAGRAPH NO. 3:**

According to Bodum's Complaint, Counts II and III (unfair competition and violation of the Illinois Uniform Deceptive Trade Practices Act) are substantially related to the claims in Count I (trade dress infringement), and this Court therefore has jurisdiction over Counts II and III pursuant to 28 U.S.C. §§ 1338(b) and 1367. Dkt. No. 1 at ¶ 6.

**RESPONSE:**

Bodum admits the allegations of Paragraph 3.

**PARAGRAPH NO. 4:**

A Top, a New York corporation with a principal place of business in Buffalo, New York, does not contest personal jurisdiction or that venue is proper in this District. *See* Dkt. No. 12 at ¶¶ 4, 7-8.

**RESPONSE:**

Bodum admits the allegations of Paragraph 4.

**PARAGRAPH NO. 5:**

Fact discovery closed on December 13, 2016. Dkt. No. 42.

**RESPONSE:**

Bodum admits the allegations of Paragraph 5.

**PARAGRAPH NO. 6:**

Expert discovery closed on July 17, 2017. Dkt. No. 73.

**RESPONSE:**

Bodum admits the allegations of Paragraph 6.

**PARAGRAPH NO. 7:**

This matter is scheduled for trial beginning on February 26, 2018. Dkt. No. 75.

**RESPONSE:**

Bodum admits the allegations of Paragraph 7.

**PARAGRAPH NO. 8:**

Each of the three counts in Bodum's Complaint is premised on A Top's alleged infringement of or unauthorized use of Bodum's "CHAMBORD® Trade Dress" through promotion and sale of A Top's Chrome SterlingPro French-press style coffeemakers. Dkt. No. 1 at ¶¶ 18-21; 25-29, 30-33, and 34-38.

**RESPONSE:**

Bodum admits that each of the three counts in its Complaint in this litigation are premised, in part, on A Top's infringement or unauthorized use of Bodum's CHAMBORD® Trade Dress. Bodum denies that each of the three counts in its Complaint in this litigation are premised solely on A Top's "infringement or unauthorized use of Bodum's 'CHAMBORD® Trade Dress.'" (Dkt. No. 1.)

**PARAGRAPH NO. 9:**

The Bodum CHAMBORD® French Press is the subject of the purported Bodum Trade Dress. Dkt. No. 1 at ¶ 1 and Ex. A.

**RESPONSE:**

Bodum admits that the overall design of the Bodum CHAMBORD® French Press coffeemaker is the subject of the Bodum CHAMBORD® Trade Dress at issue in this lawsuit. (Dkt. No. 1 at ¶¶ 1, 9–15 and Ex. A.)

**PARAGRAPH NO. 10:**

Below is a pictorial representation of a Bodum CHAMBORD® French Press:

3



Dkt. No. 1 at Ex. A.

**RESPONSE:**

Bodum admits the allegations of Paragraph 10.

**PARAGRAPH NO. 11:**

A French-press style coffeemaker is a non-electric, manually-operated coffeemaker that generally comprises a cylindrical flask or carafe (often constructed of glass), a handle affixed to the cylinder, a base, and a lid with a piston or "plunger." *See* Pasternak Decl. Ex. 1 at p. 2; Dkt. No. 1 at Ex. A.

**RESPONSE:**

Bodum admits that French press coffeemakers are non-electric and manually operated and generally have lids with a piston or "plunger." Bodum otherwise denies the allegations of Paragraph 11. French press coffeemakers come in many design varieties; some are not cylindrical in shape, some do not have handles, some do not have a handle affixed to the cylinder, some do not have a "base" but rather feet or a cork trivet. (*See* Declaration of Joergen Bodum in Support of Plaintiff's Response in Opposition to Defendant's Motion to Exclude the Expert Testimony of Robert Anders for Summary Judgment that the Claimed Trade Dress Is

4

Functional (attached to contemporaneously filed statement of facts) ¶¶ 8, 10 and Ex. F thereto; Bodum Ex. 1 hereto, Drainville Dep. Tr. 32:7-17, 35:5-10, 41:15-23, Bodum Ex. 2 hereto Grossenbacher Dep. Tr. 21:1-7.)

**PARAGRAPH NO. 12:**

To brew coffee in a French-press style coffeemaker, the user places ground coffee in the bottom of the carafe and adds boiling or near-boiling water. After brewing for a few minutes, the plunger—which has a mesh-like construction and acts as the coffee filter—is used to press the coffee grounds to the bottom of the carafe. *See* Pasternak Decl. Ex. 1 at p. 2.

**RESPONSE:**

Bodum admits the allegations of Paragraph 12, to the extent that a coffeemaker with a "carafe" is the product being used.

**PARAGRAPH NO. 13:**

The elements of the purported Bodum CHAMBORD® Trade Dress, as stated by Bodum, are: a frame, feet, handle, lid, safety lid, and carafe and plunger. Pasternak Decl., Ex. 2 at Answer to Interrogatory No. 3.

**RESPONSE:**

Bodum denies that the Bodum CHAMBORD® Trade Dress consists merely of "a frame, feet, handle, lid, safety lid, and carafe and plunger" because the cited support for this allegation, Bodum's Objections and Answer to A Top's Interrogatory No. 3, fails to support the assertion made.[1]

Bodum's claimed trade dress is in the overall look and feel of the CHAMBORD®.

Bodum admits that the Bodum CHAMBORD® Trade Dress consists of the following elements:

---

[1] *Paine v. Johnson*, No. 06 C 3173, 2010 WL 785397, at *3 (N.D. Ill. Feb. 26, 2010) (holding that courts should not consider facts in a Local Rule 56.1 Statement that "do not contain proper support from the parties' citations to the record").

1.      A frame, generally metallic, that holds and displays a glass carafe, having four equally spaced vertical bands of flat metal located on a 45° bias when viewed from above, the vertical bands being joined with a circumferential upper band.  The frame, as designed, is non-functional because it is not required for the operation of the product (evidenced, e.g., by the French press products that do not have a metal frame), and the particular and distinctive look Bodum designed for the frame serves no function other than creating an aesthetically pleasing appearance to the product.

2.      Four outwardly and downwardly splayed-out loops forming feet from the frame's vertical bands that extend outside the carafe's circumference and which are joined together below the carafe to raise the carafe's bottom.  The feet, as designed, are non-functional because they are not required for the operation of the product (evidenced, e.g., by the French press products that stand directly on the carafe or have a cap or cover under the carafe), and the particular and distinctive look/design Bodum designed for the feet serves no function other than creating an aesthetically pleasing appearance to the product.  (*Id.*)

3.      A curved handle, generally made from black plastic, which is attached at the handle's top to the frame's circumferential band and the handle's bottom to the two vertical bands farthest from the carafe's pouring spout.  The handle, as designed, is affixed to the frame by distinctive bolts.  The handle is non-functional because it is not required for the operation of the product (evidenced, e.g., by the French press products for which the user holds the carafe to pour coffee), and the particular and distinctive look Bodum designed for the frame serves no function other than creating an aesthetically pleasing appearance to the product.  (*Id.*)

4.      A circular and dome-shaped lid, generally metallic, having a rim extending beyond the carafe's circumference, where the lid fits into the glass carafe, and having a small

round knob centered atop the lid.  The lid, as designed, is non-functional because it is not required for the operation of the product (evidenced, e.g., by the French press products with a different type of lid), and the particular and distinctive look Bodum designed for the lid serves no function other than creating an aesthetically pleasing appearance to the product.  (*Id.*)

5.     The safety lid on the CHAMBORD® serves a function of consumer protection, but the particular and distinctive look Bodum designed for the safety lid serves no function other than creating an aesthetically pleasing appearance to the product.  (*Id.*)

6.     The carafe and plunger are functional aspects of the CHAMBORD®, but the particular and distinctive look Bodum designed for these features serve no function other than creating an aesthetically pleasing appearance to the product.  (*Id.*)

(Bodum Ex. 3 hereto, Plaintiff's Objections and Answers to Defendant's First Set of Interrogatories dated September 29, 2016 ("Pl. Interrogatory Answers"), Answer to Interrogatory No. 3.)

A picture of Bodum's CHAMBORD® coffeemaker, which shows the Bodum CHAMBORD® Trade Dress, is attached as Exhibit A to Bodum's Complaint.  (Dkt. No. 1. Ex. A.)

Expert Witness Rhonda Harper

**PARAGRAPH NO. 14:**

Bodum served the Rhonda Harper LLC Expert Report ("Harper Report") on February 9, 2017. Pasternak Decl., Ex. 3.

**RESPONSE:**

Bodum admits the allegations of Paragraph 14.

**PARAGRAPH NO. 15:**

Ms. Harper did not address or proffer an opinion regarding whether the asserted trade dress had acquired secondary meaning. *See generally* Pasternak Decl., Ex. 3.

**RESPONSE:**

Bodum admits the allegations of Paragraph 15.

**PARAGRAPH NO. 16:**

A Top sells the A Top's Chrome SterlingPro French-press style coffeemakers on Amazon.com. Pasternak Decl., Ex. 3 at p. 15.

**RESPONSE:**

Bodum admits the allegations of Paragraph 16.

**PARAGRAPH NO. 17:**

Bodum sells the CHAMBORD® French press on Amazon.com. Pasternak Decl., Ex. 3 at p. 15.

**RESPONSE:**

Bodum admits the allegations of Paragraph 17.

**PARAGRAPH NO. 18:**

The Harper Report states the following:

> Specifically, the relevant universe were screened to ensure responders: (1) He/She nor anyone his/her household works for an advertising agency, a public relations firm, or a market research company; (2) He/She do not now, nor in the past two years, worked for a small kitchen product manufacturer or retailer; (3) Agree to answer the questions in this survey by yourself without the help or assistance of anyone else or any other source; (4) Are wearing contacts or glasses if they need them to read; (5) Are familiar with French Press coffeemakers; and, (6) Has purchased, or would consider purchasing, a French Press coffeemaker.

Pasternak Decl., Ex. 3 at ¶ 18.

**RESPONSE:**

Bodum admits that Paragraph No. 18 accurately quotes a portion of the Rhonda Harper

LLC Expert Report dated February 7, 2017 ("Harper Report"). Bodum denies that the Harper

Report is limited to the above-quoted portion. (Bodum Ex. 4, Harper Report.)

**PARAGRAPH NO. 19:**

The Harper Report states the following:

> Test group stimuli is an array of five French Press coffeemakers, including
> PLAINTIFF and DEFENDANT products, which were rotated per responder to
> guard against bias:



Pasternak Decl. Ex. 3 at ¶ 20.

**RESPONSE:**

Bodum admits that Paragraph No. 19 accurately quotes a portion of the Harper Report.

Bodum denies that the Harper Report is limited to the above-quoted portion. (Bodum Ex. 4,

Harper Report.)

**PARAGRAPH NO. 20:**

The Harper Report states the following:

A Control stimuli was contemplated but rendered not useful as controls, including three
additional competitive branded products, are within the test graphic.

Pasternak Decl., Ex. 3 at ¶ 21.

**RESPONSE:**

Bodum admits that Paragraph No. 20 accurately quotes a portion of the Harper Report.

Bodum denies that the Harper Report is limited to the above-quoted portion. (Bodum Ex. 4,

Harper Report.)

**PARAGRAPH NO. 21:**

The Harper Report states the following:

The qualified survey respondents were then asked the following question after reviewing the stimuli:

"Do you think that each of these French Press Coffeemakers is from a separate company, or do you think that two or more are from the same company, or are affiliated or connected [in any way]? If you don't know, please feel free to say so."

Pasternak Decl. Ex. 3 at ¶ 22.

**RESPONSE:**

Bodum admits that Paragraph No. 21 accurately quotes a portion of the Harper Report.

Bodum denies that the Harper Report is limited to the above-quoted portion. (Bodum Ex. 4,

Harper Report.)

**PARAGRAPH NO. 22:**

The Harper Report states the following:

Responders were provided with four potential responses. The first three responses were rotated to guard against bias:

(1)     Each is put out by a separate company

(2)     Two or more are from the same company

(3)     Two or more are put out by companies that are affiliated or associated with each other

(4)     Don't Know, Other, or None of the Above Pasternak Decl. Ex. 3 at ¶ 23.

**<u>RESPONSE:</u>**

Bodum admits that Paragraph No. 22 accurately quotes a portion of the Harper Report.

Bodum denies that the Harper Report is limited to the above-quoted portion. (Bodum Ex. 4,

Harper Report.)

**<u>PARAGRAPH NO. 23:</u>**

The Harper Report states the following:

> Then, based on the respondents' answer, they were provided the following stimuli
> (again, rotated by responder to guard against bias) and asked the subsequent
> questions:



> "Using the labels beneath each product above, which two or more French Press
> Coffeemakers do you believe are from the same company? Please note that the
> products may be in a different order from the previous question." "Why do you
> say that? Please be as specific as possible."
>
> OR
>
> "Using the labels beneath each product, which two or more French Press
> Coffeemakers do you believe are put out from companies that are affiliated or
> associated with each other? Please note that the coffeemakers may be in a
> different order from the previous question." "Why do you say that? Please be as
> specific as possible."

Pasternak Decl., Ex. 3 at ¶ 24.

**RESPONSE:**

Bodum admits that Paragraph No. 23 accurately quotes a portion of the Harper Report.

Bodum denies that the Harper Report is limited to the above-quoted portion. (Bodum Ex. 4,

Harper Report.)

**PARAGRAPH NO. 24:**

The Harper Report states the following:

> The survey is based the commonly used Squirt Format, but to remove a spotlight
> from the brands at issue, respondents were shown an array of products (including
> the senior and junior uses) and asked: Do you think that each of these brands is
> from a separate company, or do you think that two or more are from the same
> company or are affiliated or connected [in any way]? Then asked, Why do you
> say that?

Pasternak Decl. Ex. 3 at ¶ 27.

**RESPONSE:**

Bodum admits that Paragraph No. 24 accurately quotes a portion of the Harper Report.

Bodum denies that the Harper Report is limited to the above-quoted portion. (Bodum Ex. 4,

Harper Report.)

**PARAGRAPH NO. 25:**

The Harper Report states the following:

### CONCLUSION

45. With the survey results showing a likelihood of confusion thirty-three (32.59%) and
forty percent (39.15) based on trade dress elements of the unbranded products, it is my
considered opinion, based upon my education, background, and professional experience,
and based upon my review of the survey results that there exists a strong likelihood of
confusion among consumers as to the source of DEFENDANT's Sterling Pro French
Press being the same as PLAINTIFF's Bodum French Press.

Pasternak Decl., Ex. 3 at ¶ 45.

12

**RESPONSE:**

Bodum admits that Paragraph No. 25 accurately quotes a portion of the Harper Report, except that Paragraph No. 25 above omits footnote 8, located on page 23 of the Harper Report. Bodum denies that the Harper Report is limited to the above-quoted portion. (Bodum Ex. 4, Harper Report.)

**PARAGRAPH NO. 26:**

If a survey respondent answered, "That depends, what is a French Press Coffeemaker?" to the question "Have you ever purchased, or would you ever consider purchasing, a French Press Coffeemaker?," the survey for that respondent was terminated. Pasternak Decl., Ex. 3 at pp. 61-62.

**RESPONSE:**

Bodum admits that in the survey set forth in the Harper Report, survey respondents who answered the question "Have you ever purchased, or would you ever consider purchasing, a French Press Coffeemaker?" as "That depends, what is a French Press Coffeemaker?" were terminated from continuing the survey. (Bodum Ex. 4, Harper Report.) To the extent that Paragraph No. 26 refers to any survey other than the survey set forth in the Harper Report, Bodum denies the allegations in Paragraph No. 26 on the grounds that the cited support for this allegation, the Harper Report, fails to support the assertion made.[2]

**PARAGRAPH NO. 27:**

Mark Keegan signed the Declaration of Mark Keegan on September 25, 2017.

**RESPONSE:**

Bodum admits the allegations of Paragraph 27.

---

2 *Paine v. Johnson*, No. 06 C 3173, 2010 WL 785397, at *3 (N.D. Ill. Feb. 26, 2010) (holding that courts should not consider facts in a Local Rule 56.1 Statement that "do not contain proper support from the parties' citations to the record").

**PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS THAT REQUIRE DENIAL OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1. In expert discovery in this case, Bodum served the Rhonda Harper LLC Expert Report dated February 7, 2017 ("Harper Report"). (Bodum Ex. 4, Harper Report.) Ms. Rhonda Harper has significant specialized knowledge, skill, experience, training and education in the field of consumer research surveys, including consumer research surveys on the likelihood of confusion in trade dress cases. (Bodum Ex. 4, Harper Report ¶¶ 1–6, App'x A.) Bodum's counsel engaged Ms. Harper to design a consumer research survey on the issue of likelihood of confusion in this case (the "Harper Study"). (Bodum Ex. 4, Harper Report ¶ 10.)

2. Ms. Harper designed the Harper Study based on one of two generally accepted formats for a likelihood of confusion survey and in accordance with generally accepted standards and procedures in the field of surveys, including the criteria for trustworthiness set forth in the Manual for Complex Litigation. (Bodum Ex. 4, Harper Report ¶ 15; Bodum Ex. 5, Harper Dep. Tr. at 26:12-27:16.)

3. In the Harper Study, Survey-Monkey administered the survey. Survey-Monkey is the world's leading provider of web-based survey solutions. Survey-Monkey is used by virtually 100% of the Fortune 100, along with other businesses, academic institutions, and organizations, more than 30 million people complete its surveys on a monthly basis. (Bodum Ex. 4, Harper Report ¶ 14.)

4. The Harper Study was administered under a double-blind protocol. Specifically, neither the respondents nor the staff of Survey-Monkey, the administrator of the survey, was informed as to the purpose or the sponsor of the Harper Study. (Bodum Ex. 4, Harper Report ¶ 16.)

5. In the Harper Study, participants were recruited based on meeting the nationwide universe of individuals who are ages 25 – 54 and balanced 60% and 40% for women and men, respectively. These responders were then subsequently screened during the first portion of the survey to further determine whether or not they met the universe definition as well as general industry survey participant standards. Subsequently, those potential responders who met the universe definition were invited to complete the main survey. (Bodum Ex. 4, Harper Report ¶ 17.)

6. In designing the Harper Study, Ms. Harper relied on the fact that A Top only sells its product on Amazon.com to determine what kind of survey and what kind of stimulus would be used. In addition, because the number of people who shop on Amazon.com is virtually the total population environment, attempting to limit the universe of respondents in the Harper Study to only those individuals who shop on Amazon.com would have been unnecessary. (Bodum Ex. 5, Harper Dep. Tr. at 23:17-24:12.) For example, the vast majority of consumers are Amazon.com shoppers, including approximately 71 million people on the Amazon Prime program alone. (Bodum Ex. 5, Harper Dep. Tr. at 48:7-24.)

7. In addition, the Harper Study eliminated potential purchasers who did not have current knowledge of French Press type coffeemakers in order to eliminate bias. To ask a survey

respondent about trade dress features of a product with which he or she is unfamiliar would have biased the survey.  (Bodum Ex. 5, Harper Dep. at 48:7-24.)

8.      The Harper Study used a "line-up" methodology of products and asked which, if any, of the products are put out by the same company or affiliated or associated companies.  This methodology was used because it reflects the real-world online distribution of French Press sales.  The Harper Study further provided examples from Amazon.com, Google, and Google Shopping to illustrate this point.  (Bodum Ex. 4, Harper Report ¶ 26.)

9.      In addition to one Bodum CHAMBORD$^{®}$ French Press coffeemaker and one A Top SterlingPro French Press coffeemaker, the Harper Study included in its "line up" of products three additional French Press coffeemakers from competing brands that embodied certain, but not all, of the elements of the CHAMBORD$^{®}$ trade dress.  (Bodum Ex. 4, Harper Report ¶¶ 20–21, 26.)

10.     The Harper's study's "line up" methodology created an array of products very similar to a purchasing scenario for consumers making online purchases on Amazon.com.  (Bodum Ex. 5, Harper Dep. Tr. at 17:13-18:4.)

11.     In addition, as is necessary in trade dress surveys, the Harper Study isolated the factors of trade dress at issue in order to prevent confusion by survey respondents associating the trade dress at issue with, for example, pricing or brand names.  Because such additional information can distract the survey respondent away from the test variable, it is common in the field of research to hide the brand name when doing trade dress research so as again not to bias the survey.  For example, if survey responders view two brand names, it would be very simple for them to state that the products are put out by two different companies.  In addition, the Harper Study removed brand and price information because, when viewing French Press coffeemakers on Amazon.com, it can be very difficult or even impossible to see the brand names on the products themselves.  (Bodum Ex. 5, Harper Dep. Tr. at 17:13-18:4, 19:19, 21:10-20.)

12.     The Harper Study delivered statistically significant results exceeding a 95% confidence level.  (Bodum Ex. 4, Harper Report ¶ 28.)

13.     The "line up" methodology used in the Harper Study replicated the marketplace because the relevant marketplace for the Sterling Pro and Bodum French Press coffeemakers is Amazon.com  On Amazon.com, these products are often shown on the same page and either side-by-side or next to each other vertically.  In addition, these productions are shown outside of the package, and many times without the brand name on the product.  (Bodum Ex. 5, Harper Dep. Tr. at 40:1-21.)

14.     When the "Compare to similar items" feature of Amazon.com is viewed after clicking on the webpage for a Bodum CHAMBORD$^{®}$ French Press coffeemaker, the following display is included in the results:



Declaration of Joshua Orewiler, attached hereto as Bodum Ex. 6.

15.    In order to eliminate bias, the Harper Study did not include an instruction to the survey responders instructing them to imagine that they were going to a store and viewing products to purchase for themselves.  Notably, French Press coffeemakers are often purchased as gifts, not necessarily to be used by the person who is making the purchase.  Instead of instructing survey responders to imagine they were in a shopping state of mind, the Harper Study focused the survey responders on the trade dress at issue and on whether or not the responders believed the products shown in the array were made by the same or affiliated companies.  (Bodum Ex. 5, Harper Dep. Tr. at 44:17-45:8.)

16.    In addition, the Harper Study did not use masking questions because these questions were not necessary.  Masking questions are also not commonly used in trade dress surveys.  (Bodum Ex. 5, Harper Dep. Tr. at 50:22-51:20.)

17.    The Harper Study allowed the survey responders to continue viewing the product array while they answered certain survey questions because the average consumer would not have been able to memorize which of the five products, based on the random letter assigned to each product, appeared to be from the same company or affiliated companies.  (Bodum Ex. 5, Harper Dep. Tr. at 28:10-17.)

18.    More than one survey respondent in the Harper Study expressly stated in their open ended responses that the SterlingPro French Press coffeemaker looked like a Bodum product.  (Bodum Ex. 4, Harper Report ¶ 41, at 48, 56.)  For example, one survey respondent stated that "[t]hey look like Bodum French Presses.  I own two types of Bodum French Presses and they both look incredibly similar to this one[.]"  (Bodum Ex. 4, Harper Report at 56.)

19.    Bodum's CHAMBORD® French Press coffeemaker competes against A Top's Sterling Pro French Press coffeemaker.   Both Bodum's CHAMBORD®  French Press coffeemaker and the A Top's Sterling Pro French Press coffeemaker are sold for prices of less than $50.  (Bodum Ex. 7 Himmelstrup Dep. Tr. 41:23-42:9; Bodum Ex. 8 Liang Dep. Tr. 105:8-13; Bodum Ex. 9 Bodum Dep. Tr. 101:10-21.)

20.    Bodum prides itself first and foremost as a design company, and the CHAMBORD® is the icon of Bodum's design.  (Bodum Ex. 10, Bodum Decl. ¶ 2.)  The CHAMBORD® is the original French press design.  (Bodum Ex. 10, Bodum Decl. ¶ 3.)

Bodum's predecessor designed and created the CHAMBORD® in 1958 for sale in Europe, and began selling it in the United States in 1968. The CHAMBORD® design was the first French press-type coffeemaker model of its kind to be sold in Europe and the United States. (Bodum Ex. 10, Bodum Decl. ¶ 3.) In 1983, Bodum became the exclusive United States distributor of the CHAMBORD® coffeemakers, and has sold CHAMBORD® French presses in the United States from that time until the present. (Bodum Ex. 10, Bodum Decl. ¶ 4.)

     21.    The CHAMBORD® French Press has been sold in four sizes: 3-cup, 4-cup, 8-cup, and 12-cup. Despite the differences in these sizes, the design has remained consistent. Bodum also uses the CHAMBORD® design on products that are <u>not</u> coffeemakers because the unique design serves no purpose in the process of brewing coffee. (Bodum Ex. 10, Bodum Decl. ¶ 5; Bodum Ex. 1 Drainville Dep. Tr. 19:15-16.)

     22.    In 1991, Bodum acquired the rights to the unique CHAMBORD® design and continued to sell the product in the United States. While no records of sales prior to 1990 are available, during the period January 1, 1990 through June 30, 1997, Bodum sold several hundred thousand CHAMBORD® French press coffeemakers which accounted for millions of dollars in sales during this early period. (Bodum Ex. 10, Bodum Decl. ¶ 6.) (The exact figures of Bodum's sales during this period are redacted in the Bodum Declaration, but are being submitted separately to the Court in an unredacted format with a motion to seal.)

     23.    Bodum continued to sell CHAMBORD® French presses during the period July 1, 1997 through December 31, 2004. Notably, sales of CHAMBORD® French presses increased during this time and consisted of several million dollars in sales in 2005. (Bodum Ex. 10, Bodum Decl. ¶ 7.) (More exact information regarding Bodum's increase in sales during this period is redacted in the Bodum Declaration, but are being submitted separately to the Court in an unredacted format with a motion to seal.)

     24.    Bodum has sold millions of dollars per year of CHAMBORD® design French Press coffeemakers since 2005. From January 1, 2005 to December 2016, Bodum sold millions of units of CHAMBORD® French presses in the United States (with a small amount in Canada) that generated tens of millions of dollars in sales. (Bodum Ex. 10, Bodum Decl. ¶ 8; Bodum Ex. 11, Himmelstrup Decl. ¶¶ 3–5; Bodum Ex. 7, Himmelstrup Dep. Tr. at 13:13-27:13.) (The exact figures of Bodum's sales during this period are redacted in the Bodum Declaration and the Declaration of Kasper Cameron Himmelstrup in Support of Plaintiff's Response in Opposition to Defendant's Motion to Exclude the Expert Testimony and Evidence of Rhonda Harper Regarding Likelihood of Confusion, for Summary Judgment of No Likelihood of Confusion, and for Summary Judgment of No Secondary Meaning ("Himmelstrup Decl.") but are being submitted separately to the Court in an unredacted format with a motion to seal.)

     25.    Bodum has sold the CHAMBORD® French press to numerous major retailers including Starbucks, Peet's Coffee and other coffee specialty stores, big box stores such as Target, Walmart, Bed Bath & Beyond, specialty housewares and cookware stores such as Crate

& Barrel, Sur la Table and Williams-Sonoma, and department stores such as Macy's and Kohl's. Also, Bodum has a substantial relationship with Amazon, the preeminent online retailer in the United States. (Bodum Ex. 10, Bodum Decl. ¶ 9.)

26.    Bodum has expended substantial funds in the years 1990 through the present for the marketing, promotion and advertising of CHAMBORD® coffeemakers. Bodum has actively promoted the CHAMBORD® French press in the United States since 1983. Bodum has used catalogs, television advertising, advertisements in trade and general circulation magazines and newspapers, exhibiting each year at the International Housewares Show in Chicago, the largest show in the United States, and other housewares shows, internet marketing, and Bodum's sales force. (Bodum Ex. 10, Bodum Decl. ¶ 11.)

27.    Bodum expended several million dollars to advertise and promote its products during the period January 1, 1990 through June 30, 1997 by using television and advertising, exhibiting at trade shows and product demonstrations. While these expenditures were to promote all Bodum products during that period, the CHAMBORD® French press had substantial sales (it was Bodum's second largest selling product at that time) and received a significant share of promotional expenditures, including a substantial portion of the funds expended for television advertising and being featured prominently in Bodum catalogs. Bodum spent hundreds of thousands of dollars on television advertising in 1994 and 1995, which was unusual for a small company in the housewares business to do at that time. But, Bodum did so to increase the promotion of the CHAMBORD® French press in the United States. (Bodum Ex. 10, Bodum Decl. ¶ 12.) (The exact figures of Bodum's advertising expenditures are redacted in the Bodum Declaration, but are being submitted separately to the Court in an unredacted format with a motion to seal.)

28.    Bodum continued to engage in promotional activities and make substantial expenditures during the years 2005 through the present. During this period, Bodum spent tens of millions of dollars for marketing, promotional activities and advertising for its products. (Bodum Ex. 10, Bodum Decl. ¶ 14; Bodum Ex. 11, Himmelstrup Decl. ¶¶ 6–8.) While Bodum promoted its other products as part of these expenditures, the CHAMBORD® French press was prominently featured in Bodum's advertising because it was Bodum's iconic and one of its best-selling products representing a significant percentage of Bodum's sales during the years 2010 through 2016. (Bodum Ex. 10, Bodum Decl. ¶ 14; Bodum Ex. 11, Himmelstrup Decl. ¶¶ 6–8, Bodum Ex. 7, Himmelstrup Dep. Tr. at 13:13-27:13.) Bodum also incurred large expenses relating to annual depreciation of exhibition fixtures (relating primarily to its booth at trade shows) of millions of dollars for marketing and promotional expenses during this period. (Bodum Ex. 10, Bodum Decl. ¶ 14; Bodum Ex. 11, Himmelstrup Decl. ¶¶ 6–8.) As a result, the CHAMBORD®, the original, iconic French press design, is well-associated with Bodum in the marketplace. (Bodum Ex. 10, Bodum Decl. ¶ 14.) (The exact figures of Bodum's advertising expenditures are redacted in the Bodum and Himmelstrup Declarations, but are being submitted separately to the Court in an unredacted format with a motion to seal.)

29.    The CHAMBORD® has consistently, every year, been Bodum's "figurehead" product as well as one of its best-selling products. (Bodum Ex. 1 Drainville Dep. Tr. 28:4-18,

61:10-62:1; Bodum Ex. 10, Bodum Decl. ¶¶ 15–16; Bodum Ex. 11, Himmelstrup Decl. ¶¶ 3–5; Bodum Ex. 7, Himmelstrup Dep. Tr. at 13:13-27:13.) The CHAMBORD[®] is recognized in the market as the original French press and associated with Bodum. (Bodum Ex. 1 Drainville Dep. Tr. 23:9-15.) In fact, the industry has noted the CHAMBORD[®] to be "synonymous with Bodum." (Bodum Ex. 10, Bodum Decl. ¶ 15.)

30.    Consumers in the marketplace recognize Bodum's trade dress as associated with Bodum. (Bodum Ex. 1 Drainville Dep. Tr. 26:22-27:18, 47:9-50:2, Bodum Ex. 2 Grossenbacher Dep. Tr. 18:15-19.) The SterlingPro is nearly identical to the CHAMBORD[®] with minor variations having no effect on consumers' view of the overall look and feel of the products. (Bodum Ex. 1 Drainville Dep. Tr. 54:14-24, 55:21-56:5, 57:7-17; Bodum Ex. 2 Grossenbacher Dep. Tr. 35:1-23, 36:18-37:3; Bodum Ex. 9 Bodum Dep. Tr. 56:9-57:1, 59:11-16.) SterlingPro's nearly identical appearance to the CHAMBORD[®] has caused consumers to believe that they have a Bodum when they do not. (Bodum Ex. 2 Grossenbacher Dep. Tr. 24:2-11.)

31.    Bodum has undertaken massive efforts to promote its figurehead product and ensure that the CHAMBORD[®] is associated with Bodum in the marketplace. The CHAMBORD[®] has been featured in *hundreds* of marketplace materials, such as newspapers and magazines, in its 30-year history with Bodum. The CHAMBORD[®] is often featured in picturesque settings because of its stunning design. Bodum has been featured in everything from front and center in the holiday display at Crate and Barrel's flagship store, to Starbucks preferred method of coffee at home, to *Barbie's* mobile home toy. (Bodum Ex. 10, Bodum Decl. ¶¶ 17-18.)

32.    Bodum has also advertised the CHAMBORD[®] on television, radio and online. (Bodum Ex. 10, Bodum Decl. ¶ 19.) Another key marketing tool for the CHAMBORD[®] is point-of-purchase advertising Bodum places with its distributors. (Bodum Ex. 10, Bodum Decl. ¶ 20.) Bodum also used the Internet to market the CHAMBORD[®] French press. (Bodum Ex. 10, Bodum Decl. ¶ 22.) Bodum uses its own website to promote and sell the product to retail businesses and consumers. (Bodum Ex. 10, Bodum Decl. ¶ 22.) Bodum also presently purchases Google AdWords and has done so for most of the past 10 years. (Bodum Ex. 10, Bodum Decl. ¶ 22.) Bodum also purchases ads on social media such as Facebook and Instagram and utilizes YouTube. (Bodum Ex. 10, Bodum Decl. ¶ 22.)

33.    Another key area of promotion is Bodum's participation in trade shows over the past 30 years. (Bodum Ex. 10, Bodum Decl. ¶ 21.) Bodum is an established institution at trade shows. (Bodum Ex. 10, Bodum Decl. ¶ 21.) Bodum has one of the largest booths at the Chicago tradeshow every year (the largest housewares show in the country) and entertains more traffic than virtually any other supplier. (Bodum Ex. 10, Bodum Decl. ¶ 21.) The CHAMBORD[®], Bodum's best-seller and most recognizable design, has been featured prominently at every single one of these trade shows. (Bodum Ex. 10, Bodum Decl. ¶ 21.)

34. The CHAMBORD® is frequently reviewed, promoted and praised. (Bodum Ex. 10, Bodum Decl. ¶ 23.) In addition, Bodum has received much other unsolicited recognition for the design of the CHAMBORD® over the years. (Bodum Ex. 10, Bodum Decl. ¶ 24.) There are also *dozens* of videos found online that promote the CHAMBORD® as the original French press coffeemaker and tout its stylish design. (Bodum Ex. 10, Bodum Decl. ¶ 25.)

35. Bodum vigorously enforces its rights to the CHAMBORD® iconic design, and has achieved a favorable result of removing infringing products from the marketplace more than a dozen times. (Bodum Ex. 10, Bodum Decl. ¶ 26.) Because of its iconic status and popularity due to Bodum's promotion of this design, infringers continue to knockoff the CHAMBORD® Trade Dress. (Bodum Ex. 10, Bodum Decl. ¶ 26.) Bodum has sent out at least 58 cease-and-desist letters since 1995 specific to the CHAMBORD® trade dress. (Bodum Ex. 10, Bodum Decl. ¶ 27.) The vast majority of the time, the infringing company or individual promptly agrees to stop selling the copy French press. (Bodum Ex. 10, Bodum Decl. ¶ 27.) If an infringer did not stop selling the CHAMBORD® knock-offs, Bodum initiated suit against the infringer. (Bodum Ex. 10, Bodum Decl. ¶ 28.) Bodum has filed 14 lawsuits (including the instant case) to protect the CHAMBORD® trade dress and has settled 12 lawsuits. (Bodum Ex. 10, Bodum Decl. ¶ 28.) In all of the settlements, except for one in which a limited license was negotiated, the infringer agreed to stop selling the accused product. (Bodum Ex. 10, Bodum Decl. ¶ 28.)

36. In one case, *Bodum v. LaCafetiere*, this Court ruled in 2009 that LaCafetiere had the right to sell the infringing product in the United States because of a contract Bodum had entered into with the stockholder of LaCafetiere in 1991. *Bodum U.S., Inc. v. La Cafetiere, Inc.*, No. 07 C 6302, 2009 U.S. Dist. LEXIS 25555 (N.D. Ill. Mar. 24, 2009). This Court did not consider the issue of the CHAMBORD® Trade Dress in that case—the case was decided on contractual rights alone. (Bodum Ex. 10, Bodum Decl. ¶ 29.) LaCafetiere had very little success selling its product in the market and in 2014 its parent, the Greenfield Group, entered into an agreement in which it sold this brand and the right to sell the infringing product in the United States to Lifetime Brands, Inc. Bodum promptly brought a lawsuit against Lifetime Brands and the Greenfield Group. (Bodum Ex. 10, Bodum Decl. ¶ 30.) Lifetime Brands entered into a settlement agreement agreeing not to sell the infringing products in the United States after May 31, 2016. (Bodum Ex. 10, Bodum Decl. ¶ 30.) Since the Greenfield Group sold its right to sell the knockoff products in the United States the LaCafetiere product has been excluded. (Bodum Ex. 10, Bodum Decl. ¶ 30.)

37. In the remaining case, *Bodum v. Culinary Parts, Inc.,* Bodum settled the case by granting a license to *Culinary Parts* to sell a modified version of the CHAMBORD® Trade Dress, which is called the "BonJour." (Bodum Ex. 10, Bodum Decl. ¶ 31.) This license was granted in connection with the settlement of related litigation between the parties in which a related company had brought a claim against Bodum in a contract matter. (Bodum Ex. 10, Bodum Decl. ¶ 31.) By virtue of entering into this license, *Culinary Parts* acknowledged the legitimacy of Bodum's trade dress. (Bodum Ex. 10, Bodum Decl. ¶ 31.) The BonJour French presses subject to this license have been a very small factor in the United States market. (Bodum Ex. 10, Bodum Decl. ¶ 31.)

38.     The fact that many companies have been selling copies of the CHAMBORD® demonstrates the iconic nature of this product -- many companies are attempting to profit on Bodum's design, and Bodum is addressing all of these instances.  (Bodum Ex. 10, Bodum Decl. ¶ 32.)   Bodum intends to continue vigilantly enforcing its trade dress of the CHAMBORD® French Press coffeemaker in order to maintain exclusivity in Bodum's rights to the CHAMBORD® trade dress.  (Bodum Ex. 10, Bodum Decl. ¶ 32.)

39.     A Top, on at least one occasion, has intentionally copied Bodum by asking its manufacturer to make a "holiday" French press coffeemaker (albeit not the SterlingPro) in the same exact pantone as Bodum's red French presses.  (Bodum Ex. 12, e-mail produced by A Top; Liang Dep Tr. 82:3-86:1.)

Respectfully submitted,

BODUM USA, INC.

By:     */s/ Nicole J. Wing*
        One of Its Attorneys

Of Counsel:

David E. Bennett
Nicole J. Wing
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003
(312) 609-7500
Dated:  November 3, 2017

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 3, 2017, the foregoing **BODUM USA, INC.'S RESPONSE TO A TOP NEW CASTING, INC.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT TESTIMONY AND EVIDENCE OF RHONDA HARPER REGARDING LIKELIHOOD OF CONFUSION, FOR SUMMARY JUDGMENT OF NO LIKELIHOOD OF CONFUSION, AND FOR SUMMARY JUDGMENT OF NO SECONDARY MEANING** and **PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS THAT REQUIRE DENIAL OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/Nicole J. Wing*
Nicole Wing