UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BODUM USA, INC., | ) |
| | ) |
| | ) Case No. 1:16-cv-02916 |
| Plaintiff, | ) |
| | ) Judge Matthew F. Kennelly |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| A TOP NEW CASTING, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**A TOP NEW CASTING, INC.'S REPLY IN SUPPORT OF
ITS MOTION TO EXCLUDE THE EXPERT TESTIMONY AND EVIDENCE OF
RHONDA HARPER REGARDING LIKELIHOOD OF CONFUSION,
FOR SUMMARY JUDGMENT OF NO LIKELIHOOD OF CONFUSION,
AND FOR SUMMARY JUDGMENT OF NO SECONDARY MEANING**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.   FACTUAL BACKGROUND.............................................................................................. 1

III.   ARGUMENT....................................................................................................................... 2

   A.   Harper's Testimony Is Inadmissible Under Rule 702........................................................ 2

      1.   The Design of Harper's Survey is Not Representative of the Marketplace. .............. 3

      2.   The Harper Survey Employed A Flawed Universe And Sampling Method.............. 5

      3.   The Results of the Harper Survey Are Unreliable. ................................................... 6

   B.   Bodum's Proffered "Evidence" of Likelihood of Confusion is Insufficient to Survive A Top's Motion for Summary Judgment. ............................................................................ 9

   C.   Bodum's Proffered "Evidence" That Its Claimed Trade Dress Has Acquired Secondary Meaning is Insufficient to Survive A Top's Motion for Summary Judgment. ................. 11

IV.   CONCLUSION................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.J. Canfield Co. v. Vess Beverages, Inc.*,
    796 F.2d 903 (7th Cir. 1986) .................................................................................................. 12

*AHP Subsidiary Holding Co. v. Stuart Hale Co.*,
    1 F.3d 611 (7th Cir. 1993) ........................................................................................... 2, 9, 10

*James Burrough Ltd. v. Sign of the Beefeater, Inc.*,
    540 F.2d 266 (7th Cir. 1976) .................................................................................................... 8

*Dwyer Instruments, Inc. v. Sensocon, Inc.*,
    Case No. 3:09-cv-10, 2012 WL 12281609 (N.D. Ind. Feb. 21, 2012) ....................... 4, 5, 7, 8

*Int'l Kennel Club v. Mighty Star, Inc.*
    856 F.2d 1079 (7th Cir. 1988) ................................................................................................ 12

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
    661 F.Supp.2d 940 (N.D. Ill. 2009) .......................................................................................... 8

*Rock-A-Bye Baby, Inc. v. Dex Prods, Inc.*,
    867 F.Supp. 703 (N.D. Ill. 1994) .................................................................................. 3, 9, 10

*Spraying Systems Co. v. Delavan, Inc.*,
    975 F.2d 387 (7th Cir. 1992) ................................................................................. 2, 11, 12, 15

*Wal-Mart v. Samara Bros.*,
    529 U.S. 205 (2000) .......................................................................................................... 11, 12

*Weber-Stephen Prods. LLC v. Sears Holding Corp.*,
    No. 13C01686, 2015 WL 5161347 (N.D. Ill. Sept. 1, 2015) ............................... 11, 12, 13, 14

**Rules**

Rule 702 ........................................................................................................................................... 2

I.  INTRODUCTION

A Top New Casting, Inc. ("A Top") files this Reply Brief in support of its Motion to Exclude the Expert Testimony and Evidence of Rhonda Harper Regarding Likelihood of Confusion, for Summary Judgment of No Likelihood of Confusion, and for Summary Judgment of No Secondary Meaning.  Expert Rhonda Harper's consumer survey ("the Harper Survey") and opinions are unreliable and should be excluded.  Plaintiff Bodum USA, Inc. ("Bodum") has not met its burden of establishing likelihood of confusion between its purported trade dress in its Chambord product ("the Claimed Trade Dress") and A Top's accused product.  Additionally, Bodum has not met its burden of establishing the Claimed Trade Dress has acquired secondary meaning.  For these reasons A Top's motion should be granted.

II.  FACTUAL BACKGROUND

In an attempt to generate genuine disputes of fact, Bodum misstates the factual record in this matter.  As discussed below and in A Top's Response to Bodum's Statement of Additional Facts ("ASOF"), however, these misstatements are extremely egregious and cannot raise a genuine dispute of material fact.  For example, Bodum cannot genuinely claim that the below image appears before a consumer when it clicks on the "Compare with Similar Items" link in Amazon.com for the 4-cup Chambord French press, because Bodum has improperly cropped the image:



(ASOF 14).  The actual image that appears when a consumer clicks that link is shown below:

1



(Resp. to ASOF 14). Additionally, several other "additional facts" listed by Bodum are not material to the issues in this case. Thus, there are no disputed issues of material fact, and A Top is entitled to summary judgment as a matter of law.

### III. ARGUMENT

Bodum has failed to proffer evidence of likelihood of confusion and secondary meaning sufficient to survive A Top's summary judgment motion. In particular, no reasonable jury properly instructed on the law could find for Bodum on likelihood of confusion or secondary meaning given the undisputed material facts. Moreover, Rhonda Harper's opinions should be excluded because they rely solely on a survey so flawed that it is unreliable and inadmissible.

### A. Harper's Testimony Is Inadmissible Under Rule 702.

It is undisputed that a survey can be so flawed as to be unhelpful to the trier of fact and therefore inadmissible. *Spraying Systems Co. v. Delavan, Inc.*, 975 F.2d 387, 393-94 (7th Cir. 1992); *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir. 1993). Where, as here, the survey at issue queried the wrong group of people (i.e. the universe) with the wrong stimulus and calculated the results incorrectly, the study is so severely flawed as to be unhelpful. The Court should exclude the Harper Survey, as it will only serve to confuse, rather than help, a jury.

2

1. **The Design of Harper's Survey is Not Representative of the Marketplace.**

Harper's opinion should be excluded because the survey she designed did not accurately represent the products as they appear in the marketplace. "The Court must compare the products and their trade dress against the backdrop of the marketplace, and with regard to the overall appearance of the products." *Rock-A-Bye Baby, Inc. v. Dex Prods, Inc.*, 867 F.Supp. 703, 708 (N.D. Ill. 1994) (emphasis omitted). The line-up presented to respondents in Harper's survey did not represent how the products are displayed to potential consumers in the marketplace. Thus, Harper's survey and testimony is unreliable and should be excluded.

First, Harper and Bodum admit that Harper did not include brand names and pricing information in her line-up of products. (ASOF 11). Harper and Bodum, however, cannot point to any line-up of products that occur on Amazon.com, or any other shopping websites, where the products' brand names and prices are not included. (Resp. to ASOF 14, 18). Instead, Harper removed the brand names and because she thought it was "necessary" and "common" in trade dress surveys—an assertion that flies directly in the face of the Seventh's Circuit's admonition that products must be compared against the backdrop of the marketplace. (ASOF 11).

Realizing this, Bodum attempts to buttress Harper's opinion with a novel argument that her line-up of products resembles the "Compare with Similar Items" function in Amazon.com. (Opp. at p. 12). Notably, Harper did not discuss or rely upon the "Compare with Similar Items" function on Amazon.com in her reports or during her testimony. But, even if Harper did rely on this information, Bodum's depiction of what a consumer would see if they clicked on "Compare with Similar Items" from the product description of the Bodum Chambord 4-cup product shows brand information and customer ratings—information that Harper specifically excluded from her study. (ASOF 14). Moreover, the depiction of what a consumer would see that Bodum provides

3

the Court is conveniently cropped to omit price, shipping, seller, color, dimension, material, model year, and size information. An accurate depiction of what a customer would see if they clicked on "Compare with Similar Items" is below:



(Resp. to ASOF 14). Thus, there is no genuine factual dispute that the line-up used by Harper in her study does not accurately reflect what a consumer would see on Amazon.com when shopping for a French press coffee maker. Moreover, Bodum's comparison between Harper's study and the survey conducted in *Dwyer* cannot help Bodum, as the survey in *Dwyer* included product names in the line-up at issue. *Dwyer Instruments, Inc. v. Sensocon, Inc.*, Case No. 3:09-cv-10, 2012 WL 12281609 at *3 (N.D. Ind. Feb. 21, 2012) ("The participants were presented with a five-product array ***that included the names of the products***") (emphasis added). Harper's survey is not representative of the marketplace and her testimony should be excluded.

Bodum also attempts to defend Harper's failure to place the respondents in a "shopping state of mind" prior to viewing the line-up and responding to the survey questions by suggesting that French press coffee makers are often purchased as gifts. (Opp. at pp. 13-14; ASOF 15). Neither Bodum nor Harper provide any support for the idea that French press coffee makers are often purchased as gifts. *Id.* Placing a survey respondent in a "shopping state of mind" is an

4

important step in attempting to replicate marketplace conditions. (Dkt. No. 92-6, Keegan Decl. at ¶¶ 11-12) (hereinafter "Keegan Decl."). It is undisputed that Harper did not place her survey respondents in a "shopping state of mind," and none of the reasons for this failure make any sense. For this additional reason, Harper's survey is irretrievably flawed and unreliable and Harper's testimony should be excluded.

### 2. The Harper Survey Employed A Flawed Universe And Sampling Method.

Harper's survey should also be excluded as unreliable because it employed a flawed universe and sampling method. In particular, the Harper Survey (1) excluded potential respondents because they did not know the term "French press," (2) assumed that everyone who takes online surveys shops on Amazon.com without any support, (3) did not employ masking questions without any basis for doing so, and (4) was not a double-blind survey.

First, it is undisputed that Harper's survey excluded potential respondents because they did not know the term "French press." (ASOF 7). But, Harper provides no support for the proposition that a person who does not know the term "French press" is not a potential purchaser of a French press-type coffee maker. *Id.* Indeed, French-presses style coffee makers are also known by other names such as "coffee press," "plunger pot," "press pot," "coffee press plunge," and "cafetiere"—and Bodum knows it. (Resp. to ASOF 7). If the potential respondent knew French-press style coffee makers by any of these other names, Harper's survey excluded them. (ASOF 7).

Harper also provides no basis for her assumption that all of her survey respondents shop on Amazon.com. (ASOF 6). Bodum's purported factual basis for this claim is just Harper's deposition testimony—where Harper could not provide any actual demographic information

5

regarding shoppers on Amazon.com or point to any sources she relied upon for this assumption. (Resp. to ASOF 6).

Similarly, Harper's bald statement that masking questions were unnecessary in her survey is unsupported. Bodum's citation to the Reference Guide on Survey Research explains why masking questions are important—not why they were not necessary in Harper's survey. (Reference Guide on Survey Research at pp. 386-87; ASOF 16). Similarly, Bodum's assertion that "masking questions are not commonly used in trade dress surveys" is contradicted, not supported, by the Reference Guide on Survey Research. *Id.*

Finally, Harper's failure to use masking questions resulted in a survey that was not double-blind. Contrary to Bodum's assertion, a double-blind protocol does not exist where the interviewer and respondents "are not informed" of the sponsor and purpose of a survey, but rather where "[b]oth the interviewer and the respondent are blind to the sponsor of the survey and its purpose." (Opp. at p. 16; Reference Guide on Survey Research at 411). Both explicit *and implicit* clues about the sponsor or purpose of the survey can result in a survey not being "double-blind." (Reference Guide on Survey Research at 411). Here, where the survey questions themselves informed the respondents that the survey was about French press coffee makers prior to the actual comparison, the survey implicitly informed the respondents (and interviewer) about the purpose of the survey. (Keegan Decl. at ¶ 21).

For all of the reasons discussed above, the Harper Survey employs a flawed universe and sampling method and should be excluded as unreliable.

### 3. The Results of the Harper Survey Are Unreliable.

Finally, the results of Harper Survey are unreliable because (1) there is no support for Harper's contention that her survey represents one of two accepted surveys for trade dress likelihood of confusion and (2) the Harper Survey did not employ a control.

6

First, although Harper repeatedly represents that the survey she conducted followed the format of one of two accepted surveys for studying trade dress likelihood of confusion, neither Harper nor Bodum provides any independent basis for that assertion. (ASOF 2; Opp. at 11). It is notable that Harper, despite citing several treatises regarding the proper way to conduct surveys, fails to point to any support for the proposition that her survey structure and results are "accepted." (ASOF 2). Indeed, leaving the "line-up" up during the survey and asking the respondents to play a matching game is not an acceptable methodology—instead of testing the likelihood of confusion between the products, it simply tests whether the respondent can match items he or she thinks are similar. (Keegan Decl. at ¶¶ 28-29). Bodum's citation to *Dwyer* is once again inapposite, as *Dwyer* does not even mention whether or not the "line-up" stimulus was up during the survey. *Dwyer*, 2012 WL 12281609 at **3-6.

An additional reason the results of the Harper Survey are unreliable is because the Harper Survey does not actually use a control, which she freely admits. SOMF 20. Bodum argues that the three additional products included in Harper's product line-up constitute a "control." (Opp. at pp. 17-18). However, Bodum provides no basis for its argument that the inclusion of these products reduced "noise" (the purpose of a control). *Id.* Moreover, the 39.15% repeatedly cited by Bodum and Harper as the percentage of "likelihood of confusion based on trade dress elements of the unbranded products at issue" includes respondents who also thought one or more of the "control" products were also put out by the same or affiliated companies—i.e. the percentage includes noise. (Dkt. No. 92-1, A Top's Statement of Material Facts ("SOMF") 25; Opp. at p. 18). In other words, even if Harper intended to use the three third-party products in the line-up as controls, she failed to account for them when calculating her results. Properly calculated to eliminate noise, the Harper Survey only shows a 9% likelihood of confusion.

(Keegan Decl. at ¶¶ 30-31).[1] Bodum's arguments to the contrary are entirely unsupported—Bodum does not even cite Harper for its contention that inclusion of the three third party products, on its own, was sufficient to eliminate noise from the survey. (Opp. at pp. 17-18).

The cases Bodum cites do not help Bodum or Harper. For example, in *LG Electronics*, the court found that a dispute over whether a particular control that was used was appropriate went to the weight of the evidence, not admissibility. *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F.Supp.2d 940, 956-57 (N.D. Ill. 2009). Here, Bodum claims Harper used a control (despite Harper stating that she did not), but Harper failed to actually account for the control when calculating her results. This is not an accepted practice for survey experts, and her results are therefore unreliable and inadmissible. (Keegan Decl. at ¶¶ 30-31). Additionally, as discussed above, Harper's study is not the same as the study conducted in *Dwyer*, and Bodum's reliance on that case as identifying an "appropriate" methodology for surveys is misplaced. *Dwyer*, 2012 WL 12281609 at **3-6. Finally, Bodum cites *Beefeater* for the proposition that a 39% likelihood of confusion finding is sufficient to raise an issue of fact. (Opp. at 18). However, as discussed above, Harper's study, accounting for noise, resulted in an approximately 9% level of confusion—significantly lower than the 15% described in *Beefeater*. *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 279 (7th Cir. 1976).[2]

---

[1] Bodum's argument that not including the brand name, price, and other information in the study is an appropriate control is a red herring because this goes to whether the survey was properly constructed, not whether the study was properly controlled. *See LG Elecs.*, 661 F.Supp.2d at 955 ("a proper control should be similar to the test group and: share[] as many characteristics with the experimental stimulus as possible.") (citations omitted). Removal of information from the test stimulus simply does not fit in a discussion of controls.

[2] *Beefeater* also acknowledged that "the percentage of likely confusion required may vary from case to case" and that, in that case, 15% was sufficient because it represented 15% of the entire restaurant-going community. *Beefeater*, 540 F.2d at 279. Bodum provides no justification for its argument that 39% is sufficient to show likelihood of confusion based on the facts at issue here.

8

Harper's survey and opinion is unreliable because its design is not representative of the marketplace, it employed a flawed universe and sampling method, and its results are unreliable. For all of these reasons, the Harper Survey is so severely flawed as to be unhelpful to the trier of fact, and the Court should exclude it and Harper's opinion that relies upon the Harper Survey.

### B. Bodum's Proffered "Evidence" of Likelihood of Confusion is Insufficient to Survive A Top's Motion for Summary Judgment.

A reasonable jury could not find a likelihood of confusion in this matter based on the evidence proffered by Bodum. It is the party asserting infringement's burden to prove likelihood of confusion in a trade dress infringement case. *Rock-A-Bye*, 867 F.Supp. at 706. Bodum lists seven factors courts consider when determining whether a likelihood of confusion exists. Notably, none of the factors alone is dispositive in a likelihood of confusion analysis, and the moving party need not show that the party asserting infringement cannot prove any of the factors. *AHP*, 1 F.3d at 615-16 (rejecting argument that summary judgment is not appropriate unless there is no admissible evidence on all seven factors). Other than Harper's flawed survey, the totality of evidence proffered by Bodum regarding likelihood of confusion consists of open-ended responses to the flawed Harper Survey reciting the name "Bodum," that both products at issue are French press coffee makers, that the products compete against each other, that the products are "relatively low-priced housewares," and that the Chambord has existed for several decades. This evidence is insufficient to prove likelihood of confusion.

For purposes of summary judgment, A Top does not dispute that the products at issue are both French press coffee makers, compete against each other, are relatively low-priced housewares, and that the Chambord has existed for several decades. This is not sufficient for Bodum to survive summary judgment, however. Similar facts probably exist in many trademark and trade dress cases, but they do not establish a likelihood of confusion. *See AHP*, 1 F.3d at

9

615-16 (defendant entitled to summary judgment even though it conceded three factors favored the plaintiff).

Bodum has failed to adduce any evidence of similarity of the products or actual confusion, because Bodum's only "evidence" regarding these factors is either inadmissible or insufficient. First, Bodum cites the testimony of Alan Grossenbacher for the proposition that some consumers have believed they have a Bodum "when they do not." (Opp at p. 19). A review of Mr. Grossenbacher's testimony, however, shows that he testified that he had heard that "colleagues" at Bodum had heard from customers that believed they had a Bodum but didn't have a Bodum. (Response to ASOF 30). Moreover, Mr. Grossenbacher could not remember who he heard this from and could not identify the "colleagues" who spoke to these purported customers. *Id.* This is, at best, inadmissible double hearsay.[3] Moreover, a review of Mr. Grossenbacher's testimony reveals that he did not testify that these consumers had a SterlingPro and thought it was a Bodum—rather he testified Bodum had received complaints about "[p]eople believing that they have a Bodum and it's not a Bodum." (ASOF 30). Finally, even if the Court admits Mr. Grossenbacher's testimony on this issue, the inability to test or support his assertions entitles the testimony to very little weight. *Rock-A-Bye*, 867 F.Supp. at 709.

Bodum's "evidence" of the Harper survey respondents' open-ended responses is similarly unhelpful to prove actual confusion or similarity. As discussed above, Harper's survey was flawed in so many respects that the Court should find it inadmissible, including the open-ended

---

[3] Although courts will often allow evidence of consumer confusion under the present state of mind exception to hearsay, Mr. Grossenbacher did not testify that he had personally spoken to these customers. Rather, an additional layer (or two) of hearsay exists where a customer's present state of mind was purportedly relayed to Mr. Grossenbacher's "colleague" and was then relayed to either Mr. Grossenbacher or the person from whom Mr. Grossenbacher heard about the purported complaint. There is no hearsay exception for the "colleague's" re-telling of the customer's statement, and therefore Mr. Grossenbacher's testimony constitutes inadmissible hearsay.

responses Harper herself categorized. Moreover, the Harper Survey used a four-legged SterlingPro as its stimulus, despite A Top's redesign of its product to have only three legs. (SOMF 19). Thus, to the extent Bodum attempts to rely upon "similarity" of the products based on the Harper Survey open-ended responses, the responses are only relevant to an out-of-date four-legged SterlingPro product.

Bodum's proffered evidence of Likelihood of Confusion does not raise a material issue of disputed fact and is not sufficient to survive summary judgment. The Court should grant A Top's motion.

      C.     **Bodum's Proffered "Evidence" That Its Claimed Trade Dress Has Acquired Secondary Meaning is Insufficient to Survive A Top's Motion for Summary Judgment.**

Bodum's proffered "evidence" of secondary meaning similarly fails to show a reasonable jury could find that secondary meaning in the Bodum Chambord exists. Secondary meaning is "a mental association in buyers' minds between the alleged mark and a single source of the product." *Spraying Systems*, 975 F.2d at 393. Proof of secondary meaning requires showing "evidence of exposure plus evidence of connection." *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, No. 13C01686, 2015 WL 5161347 at *5 (N.D. Ill. Sept. 1, 2015). "It can be established through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." *Spraying Systems*, 975 F.2d at 393. The party asserting unregistered trade dress has the burden of proving the Claimed Trade Dress has acquired secondary meaning. *Wal-Mart v. Samara Bros.*, 529 U.S. 205, 210, 216 (2000). Bodum has utterly failed to proffer any evidence of connection—i.e. that consumers connect the Claimed Trade Dress with a single source—and therefore has failed to carry its burden with respect to secondary meaning.

A Top does not, for purposes of summary judgment, argue that a genuine issue of material fact exists as to whether Bodum has used the Claimed Trade Dress for a long period, has expended significant time and effort in advertising the Claimed Trade Dress, sold a relatively large volume of products, holds a dominant place in the market for French presses, and has threatened many smaller French press coffee makers with trade dress infringement lawsuits.[4] However, this evidence only goes to consumer exposure, not consumer connection. None of the use, advertising, or sales information shows a connection in the consumers' minds between the Claimed Trade Dress and a single source. *Weber*, 2015 WL 5161347 at *5. Evidence of "sales, advertising, and use is entirely circumstantial, and courts have noted that this type of evidence alone is often insufficient to establish secondary meaning." *Spraying Systems*, 975 F.2d at 393.

In order to prove a connection in the consumers' minds between the Claimed Trade Dress and a single source, parties asserting trade dress must typically provide direct consumer testimony, consumer surveys, or proof of intentional copying. *See Weber*, 2015 WL 5161347 at **4-5. Bodum's attempts to adduce any evidence on these factors fail. First, Bodum does not dispute that it does not proffer survey evidence regarding secondary meaning.[5] (Opp at p. 20). Additionally, although Bodum states in its brief that "This industry, and consumers, have noted the design of the CHAMBORD® to be synonymous with Bodum," a review of the "evidence"

---

[4] Notably, none of these threats have resulted in any court finding that Bodum's asserted trade dress is valid or enforceable. Mostly, the threats result in settlements. (ASOF 35). The Supreme Court has cautioned against this type of bullying of competitors in the disguise of protection of trade dress. *Wal-Mart*, 529 U.S. at 213.

[5] Bodum's purported legal support for the proposition that a party asserting unregistered trade dress need not provide any survey evidence fails to support the proposition. Both *A.J. Canfield* and *Int'l Kennel Club* were decided at the preliminary injunction stage, and therefore the burden necessary for the plaintiffs in both cases was different than in a summary judgment motion. *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 906 (7th Cir. 1986); *Int'l Kennel Club v. Mighty Star, Inc.* 856 F.2d 1079, 1084 (7th Cir. 1988) (standard at preliminary injunction stage is "better than negligible" chance of succeeding on the merits). In any event, A Top's argument is that Bodum's evidence, in its entirety, is insufficient to show secondary meaning.

Bodum claims supports this statement reveals only self-serving statements from Bodum employees. (Opp at 19; Response to ASOF 29-30). Bodum points to no evidence from actual consumers that they associate the Claimed Trade Dress with Bodum. *Id.*

Perhaps realizing that it had no evidence from actual consumers connecting the Claimed Trade Dress with Bodum, Bodum attempts to re-purpose the Harper Survey—a survey Harper herself testified was not a secondary meaning survey—as a secondary meaning survey by pointing to open-ended responses from survey respondents. (Resp. to ASOF 18). This attempt fails for several reasons. First, Harper freely admitted that she did not do a secondary meaning survey. (Resp. to ASOF 18). Second, it is inappropriate to re-purpose the Harper Survey in this way because not all of the respondents were asked open-ended questions (only the respondents that responded that some of the products came from the same or affiliated companies were asked open-ended responses). *Id.* Moreover, even among the sub-set of respondents who were asked open-ended questions in the survey, only 4 of at least 180, or less than 3%, mentioned Bodum by name. *Id.* A 3% response rate among respondents who knew what a "French press" is by name is not sufficient to show secondary meaning in the marketplace for French presses.[6]

The remainder of the evidence Bodum proffers is a rather tortured argument regarding intentional copying of the Claimed Trade Dress. Bodum has not proffered any evidence that A Top, or anyone else for that matter, has ever intentionally copied the Claimed Trade Dress in an attempt to pass off the product as its own. "Intentional copying, though, 'is only evidence of secondary meaning if the defendant's intent in copying is to confuse consumers and pass off his product as the plaintiffs.'" *Weber*, 2015 WL 5161347 at *4 (citing *Thomas & Betts*). Because

---

[6] To the extent Bodum claims that the open-ended responses should not be treated as responses in a survey, but rather as "direct testimony" from consumers, the open-ended responses to the Harper Survey do not constitute testimony. Indeed, neither A Top nor Bodum cannot identify or test these respondents' statements. Thus, at best, Bodum can only rely on these statements as a make-shift survey that fails to show secondary meaning.

13

Bodum has not provided any evidence, circumstantial or otherwise, that A Top (or anyone else) copied the Claimed Trade Dress in an attempt to pass off its products as Bodum's products, Bodum has failed to show that the copying factor is evidence of secondary meaning.

Bodum cites evidence of its aggressive "policing" of its trade dress in support of the contention that it's Claimed Trade Dress has been intentionally copied. (Opp at 24-25). Notably, none of Bodum's self-serving evidence shows that the third party companies that Bodum claims copied its trade dress intentionally copied the Claimed Trade Dress—let alone that these third party companies intended to pass off their products as Bodum's. (Resp. to ASOF 38; ASOF 35-37). Because Bodum has no support for the proposition that these companies intended to pass off their products as Bodum's, this evidence fails to support a finding of secondary meaning. *Weber*, 2015 WL 5161347 at *4.

Even more attenuated is Bodum's "evidence" regarding purported copying by A Top itself. First, even Bodum admits that the "copying" it claims occurred did **not** involve Bodum's Claimed Trade Dress. (ASOF 38; Opp. at 25). It is unclear how intentional copying of a different product, even if it happened, would support a reasonable jury verdict that the Claimed Trade Dress has acquired secondary meaning. Even assuming this proposition is true, though, Bodum's cited evidence fails to support the proposition that A Top copied anything—let alone intentionally copying the color of one of Bodum's products. A Top provided a picture of a Bodum product (not the Claimed Trade Dress) and asked its manufacturer to "check" the picture when A Top and the manufacturer were trying to decide on a Pantone color for an A Top product. (Resp. to ASOF 39). At no point did A Top instruct the manufacturer to copy the color of the Bodum product. *Id.* And there is absolutely no evidence that A Top intended to pass off that red-colored product (not the accused product) as a Bodum product. *Id.*

Finally, Bodum totally ignores the extensive third party offers for sale of products that closely resemble the Chambord French press. (Resp. to ASOF 35). Such abundant evidence of third party use vitiates Bodum's assertion of secondary meaning.[7] *Spraying Systems*, 975 F.2d at 393 (secondary meaning evidence found insufficient to create a genuine issue of material fact).

Bodum reaches mightily in an attempt to avoid summary judgment by misrepresenting both the law regarding secondary meaning and the material facts at issue. However, a review of the appropriate factors and factual record reveals no reasonable jury could find that Bodum's Claimed Trade Dress has acquired secondary meaning. Thus, A Top is entitled to summary judgment and dismissal with prejudice.

### IV. CONCLUSION

For the reasons stated herein, there is no genuine issue as to any material fact, and A Top is entitled to judgment as a matter of law that Bodum cannot meet its burden to prove that A Top's accused product is likely to be confused with Bodum's Claimed Trade Dress and that Bodum's Claimed Trade Dress has acquired secondary meaning. A Top respectfully requests that this Court grant summary judgment in favor of A Top as to each count of Bodum's Complaint in this action. A Top also requests that the survey and testimony of Rhonda Harper be excluded. Finally, A Top requests that this case be dismissed with prejudice.

Dated: November 28, 2017

Respectfully submitted,

By: */s/ Thomas G. Pasternak*
Thomas G. Pasternak
Robyn Bowland
Akerman LLP
71 South Wacker Drive
46th Floor
Chicago, Illinois 60606

---

[7] Extensive third party use of the Claimed Trade Dress is also evidence of functionality.

15

                                      Tel. (312) 634-5700
                                      Fax. (312) 424-1900
                                      thomas.pasternak@akerman.com

*Attorneys for Defendant,*
*A Top New Casting, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a copy of the foregoing**, A Top New Casting, Inc.'s Reply in Support of Its Motion to Exclude the Expert Testimony and Evidence of Rhonda Harper Regarding Likelihood of Confusion, for Summary Judgment of No Likelihood of Confusion, and for Summary Judgment of No Secondary Meaning**, was filed on November 28, 2017, via the Court's CM/ECF system, which will automatically send notices to all counsel of record.

                */s/ Thomas G. Pasternak*
                Thomas G. Pasternak