**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BODUM USA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No 16 C 2916 |
| ) | |
| A TOP NEW CASTING INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER ON DEFENDANT'S POST-TRIAL MOTIONS

After a trial, a jury found in favor of plaintiff Bodum USA, Inc. and against defendant A Top New Casting Inc. on Bodum's claim of trade dress infringement under the Lanham Act. The jury also found that A Top's infringement was willful. It awarded Bodum $2 million, which it found to be A Top's profits gained from the trade dress infringement. A Top has moved for entry of judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and for a new trial under Federal Rule of Civil Procedure 59(a). The Court denies both motions for the reasons stated below.

**1.      Motion for judgment as a matter of law**

Entry of judgment as a matter of law under Federal Rule of Civil Procedure 50 is appropriate only if no rational jury could have found for the prevailing party. *See, e.g., Venson v. Altamirano*, 749 F.3d 641, 646 (7th Cir.2014). When reviewing a motion for judgment as a matter of law, the Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

A Top's first contention is that Bodum abandoned its trade dress by engaging in what is sometimes called "naked" licensing. A party making such a contention faces a heavy burden. *See* Restatement (Third) of Unfair Competition § 33 cmt. c (Am. Law. Inst. 1995) ("Because a finding of inadequate control can result in a forfeiture of trademark rights, courts impose a heavy burden on the person asserting a lack of reasonable control by a licensor."); *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997) (same). To carry this burden, A Top was required to establish that Bodum "allow[ed] others to use the mark without exercising reasonable control over the nature and quality of the goods, services, or business on which the mark is used by the licensee." *Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 639 F.3d 788, 789 (7th Cir. 2011).

The evidence at trial, viewed in the light most favorable to Bodum as required, showed the following. First, Bodum's license agreement with the licensee in question contained quality control requirements, non-compliance with which entitled Bodum to terminate the license. Second, the product manufactured by the licensee was tested for quality at the time the license agreement was entered into. Third, Bodum's principal, Joergen Bodum, later visited the licensee's facility to assess its compliance. And fourth, Bodum sent its outside counsel to trade shows annually to inspect the licensed products and report back to the company. Contrary to A Top's argument, this case is nothing like *Eva's Bridal*, in which the trademark holder "did not retain *any* control—not via the license agreement, not via course of performance." *Id.* at 790-91. A reasonable jury could find that Bodum retained "reasonable control" over the nature and quality of the goods made and sold by the licensee.

A Top's second contention is that Bodum failed to prove that its trade dress was non-functional, as required in order for it to be enforceable under the Lanham Act. The jury was instructed, without objection by A Top, that Bodum had to prove (among other things) that its trade dress was not functional. The jury was instructed, again without objection by A Top, to determine this question as follows:

> A trade dress is functional if it is necessary to the operation of the product as a whole. To determine this, you are to consider the following:
>
> • Are there other designs that could perform the function equally well? (If so, this is evidence that the design is not functional.)
>
> • Is there a patent that discloses the practical advantages of the design? (If so, this is strong evidence that the design is functional.)
>
> • Does the design provide a practical advantage? (If so, this is evidence that the design is functional.)
>
> • Has Bodum advertised or promoted the practical advantages of the design? (If so, this is evidence that the design is functional.)
>
> • Does the design result from a comparatively simple, cheap, or superior method of manufacturing the product? (If so, this is evidence that the design is functional.)
>
> To determine whether a product's trade dress is functional, you should consider everything that makes up the trade dress.

Instructions to the Jury, dkt. no. 185 at 14.

A Top's contention in its Rule 50 motion is twofold. First, it argues that Bodum offered no testimony that the elements of its claimed trade dress did not confer a cost or quality advantage and that this is fatal to its claim of non-functionality. Second, A Top argues that Bodum offered no testimony that alternative designs offered the same features as Bodum's and that this likewise is fatal to Bodum's claim of non-functionality.

The Court disagrees on both points. First, Bodum's expert testified that the

3

company's design was "complicated" and "complex" and that "[t]here are a lot simpler ways of doing this." He also testified that other designs would be less complicated and thus less expensive to make. Bodum also offered testimony by Joergen Bodum regarding other cheaper ways to make a French press coffee maker and to the effect that the design claimed to be protected by trade dress was one of the most expensive models Bodum produces. Assuming the law requires a finding of no cost or quality advantage from the claimed trade dress as a prerequisite to a determination of non-functionality—a point the Court need not decide—Bodum offered evidence from which a reasonable jury could make such a finding.

Second, there was ample evidence in the record regarding alternative products that contain the same features as Bodum's French press, but with different designs. This evidence included numerous physical exhibits—other French press coffee makers—that were introduced in evidence and shown to the jury. And as Bodum points out, the functional elements of its product, the carafe and the plunger, are not part of its claimed trade dress.

For these reasons, the Court denies A Top's motion for judgment as a matter of law.

**2.     Motion for new trial**

A Top makes three arguments in support of its motion for a new trial. The Court addresses them in reverse order.

First, A Top contends that the jury was tainted by media reports prior and during trial regarding a so-called "trade war" with China and hostile U.S. relations with China. (The owner of A Top is a Chinese national.) This point is forfeited, because A Top

never raised it during trial or the jury's deliberations and, indeed, made no mention before or during the trial about any possibility that anti-Chinese bias might affect the case in any way. Even now, in its post-trial motion, A Top has made no effort to document the claimed inflammatory publicity about China and thus has forfeited the point in this way as well. In addition, the jury was instructed that it should not be influenced by any person's national origin, race, or color, and it was instructed both before and after trial that it must disregard anything it saw or heard outside the courtroom. There is no basis to believe that the jury did not follow these instructions.

Second, A Top notes that the instructions to the jury and the verdict form did not distinguish between A Top's two alleged infringing products, one of which had four feet and one of which had three. During deliberations, the jury asked to see one of the products, and a question was also sent out asking when the design was changed. From this, A Top infers that the jury must have been confused, and it criticizes the fact that the verdict form did not allow separate findings on the two designs. The short answer to this is that A Top waived any challenge to the instructions on this point. Specifically, A Top agreed to the instructions and verdict form as they were given to the jury (except for two or three unrelated points on which it made objections); it never sought to distinguish between the two A Top products in the instructions or the verdict form. If this were not enough by itself, there is more: A Top did not suggest, when the jury notes were sent out during the deliberations, that there was any flaw in the jury charge or the verdict form along the lines its now cites.

The Court also notes that A Top is reading into the jury's request and question far more than they reasonably support. The Court's experience with jury deliberations,

derived from presiding over at least two hundred jury trials, is that jury notes are quite often sent out not because the jury as a group has a question, but because a particular juror has raised a point on which other jurors seek the Court's assistance for a response. That aside, it is wildly speculative to conclude from these two brief notes that the jury was confused over its options on finding infringement with respect to the two designs sold by A Top. If anything, the fact that the jury was willing to ask questions suggests that if it was confused in the way A Top suggests, it would have sent out a question focusing on that point. Finally, if one is going to try to draw an inference about what the jury—or one or more jurors—was getting at via the question and request, it is much more likely that it was considering A Top's design change in addressing the question of willfulness. In any event, A Top's argument provides no basis to grant a new trial.

Third, A Top challenges the Court's striking, as improvidently admitted, evidence of certain utility patents. The Court addressed this point in detail during the trial and need not repeat it here, other than to say that it reaffirms the in-trial ruling. In a nutshell, unlike in *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277 (7th Cir. 1998), cited by A Top, none of the advances claimed in the patents in question "matche[d] the essential feature[s] of the [trade dress]" claimed by Bodum. *Georgia-Pac. Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 728 (7th Cir. 2011) (internal quotation marks omitted) (citing *TrafFix Devices, Inc. v. Marketing Displays Inc.*, 532 U.S. 23, 30 (2001). Finally, the Court observes, as it believes it did during trial, that the fact that a product feature *has a function* does not make it "functional" as that term is understood in trade dress law. A Top persists in confusing these two points.

6

**Conclusion**

The Court denies defendant's motion for judgment as a matter of law and its motion for a new trial for the reasons stated above. All other pending motions remain under advisement. The ruling date for those motions is reset to June 15, 2018 at 10:00 a.m.

Date: June 6, 2018

_____
MATTHEW F. KENNELLY
United States District Judge